# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 04-4277

KEVIN A. DAL POZZO,

*Plaintiff-Appellee,*

*v.*

BASIC MACHINERY COMPANY, INCORPORATED
and FANUC ROBOTICS AMERICA, INCORPORATED,

*Defendants-*
*Third-Party Plaintiffs-Appellees,*

*v.*

RICHARDS BRICK COMPANY,

*Third-Party Defendant-Appellant,*

and

APPEAL OF:

GREGORY C. VACALA, Attorney.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 03 C 138—**G. Patrick Murphy**, *Chief Judge.*

ARGUED NOVEMBER 8, 2005—DECIDED SEPTEMBER 6, 2006

Before CUDAHY, KANNE, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* This appeal challenges an award of costs and attorneys' fees imposed against Attorney Gregory Vacala as a sanction for his postsettlement obstructionism that necessitated an otherwise unnecessary motion to enforce the parties' settlement agreement. We agree with the district court that Vacala's conduct was sanctionable. Moreover, his appeal is frivolous. We order Vacala to pay reasonable attorneys' fees and double costs as a sanction pursuant to Rule 38 of the Federal Rules of Appellate Procedure.

## I. Background

Plaintiff Kevin Dal Pozzo was injured on the job when something went wrong with an automated brick conveyor system he was working on at his place of employment, Richards Brick Company. Dal Pozzo sought workers' compensation from Richards Brick and sued Basic Machinery Co., Inc., which built the conveyor system, and Fanuc Robotics America, Inc., which provided the parts that malfunctioned. Basic and Fanuc filed a third-party complaint for contribution against Richards Brick.

Richards Brick was represented in this action by two attorneys: Vacala, whose firm is in Chicago, and Attorney Farrah Anderson, whose firm is in Carbondale, Illinois. Vacala took the position that Richards Brick was an insured under the policies of Basic and Fanuc, and sent a letter purporting to tender its defense to the insurance companies for Basic and Fanuc. Basic's insurer declined the tender; Fanuc's insurer never responded.

Eventually the parties reached an oral settlement and notified the district court that the case was settled. Chief Judge G. Patrick Murphy entered an order dismissing the action with prejudice, but preserving the right to reopen if the settlement was not consummated. The first draft of the parties' settlement agreement stated in relevant part:

DAL POZZO, BASIC, FANUC . . . and RICHARDS desire to compromise, settle and conclude *all the various disputes, controversies, claims and causes of action of any kind* which DAL POZZO or *any person, firm, corporation or other entity have, may have or claim to have*, directly or indirectly, against BASIC, FANUC, . . . RICHARDS, *and/or their insurers*, or which in any way relate to or derive from, directly or indirectly, the claims of DAL POZZO against all others, including, but not limited to, those matters set forth in or in any way related to the various pleadings filed in the DAL POZZO litigation, and any and all other potential causes of action, claims and/or controversies which DAL POZZO has, may have or could have against BASIC, FANUC, . . . and/or RICHARDS for injuries which DAL POZZO allegedly sustained at any time, or for damages which DAL POZZO may have sustained at any time. (Emphasis added).

Attorney Anderson represented Richards Brick throughout the settlement negotiations and approved the draft language. In the meantime, and contrary to the foregoing terms of the draft settlement agreement, Vacala continued to press Fanuc's insurer about his tender of Richards Brick's defense. Basic and Fanuc then inserted the names of their insurance companies into the written settlement agreement (among other immaterial modifications to the agreement).

When Vacala got wind of this modification, he refused to sign the settlement agreement on behalf of Richards Brick. He maintained that the new draft required Richards Brick to release its claims against the insurers, while the first draft did not. The reason for this position is a mystery—the language of the first draft, quoted above, plainly referred to Basic's and Fanuc's insurers, and the new draft simply inserted their names. Vacala asserted that Richards Brick had agreed to settle only liability issues, not any

insurance coverage claims it had against the defendants' insurers. The attorneys for Basic and Fanuc believed Vacala's claims for coverage under their clients' policies were utterly meritless; they pointed out that Vacala had copies of all the policies involved and none even remotely gave Richards Brick the status of an insured. Indeed, Richards Brick did not even have contractual relationships with either Basic or Fanuc. Basic subcontracted with Harrop Industries, Richards Brick's general contractor (not a party to this appeal), and Fanuc contracted with Basic to provide parts.

Frustrated by the delay, Dal Pozzo's counsel e-mailed Vacala warning him that if he persisted in blocking completion of the settlement, a motion to enforce the agreement would become necessary and costs and fees associated with the motion would be sought. Vacala continued to obstruct consummation of the settlement, and Dal Pozzo, Basic, and Fanuc all filed motions to enforce the settlement agreement. Dal Pozzo and Basic also sought an award of costs and fees.[1] Chief Judge Murphy held a hearing on the motions, which Vacala did not attend; he sent Anderson instead. Each of the lawyers was sworn in and testified to the events surrounding the settlement. The lawyers for Basic and Fanuc also explained that Richards Brick could

---

[1] Although Fanuc did not include a request for costs and fees in its motion to enforce the settlement (as Dal Pozzo and Basic had), Fanuc's lawyer stated at the beginning of the motion hearing that the parties were seeking costs and fees as a sanction for Vacala's conduct in blocking consummation of the settlement. The district judge apparently construed the lawyer's statement as an oral motion for costs and fees. This was appropriate under the circumstances; Attorney Anderson, Richards Brick's counsel, was in court and had proper notice and opportunity to respond, which is all that is required. *Larsen v. City of Beloit*, 130 F.3d 1278, 1286 (7th Cir. 1997).

not possibly be covered by their clients' insurance policies in this case. Anderson, for Richards Brick, did not dispute that contention, nor did she dispute that she had approved the language of the draft settlement agreement. There was no disagreement among the attorneys that the reason the settlement had not been concluded was that Vacala insisted on pursuing baseless coverage claims against Basic's and Fanuc's insurers.

Chief Judge Murphy ordered the settlement enforced. Clearly displeased that Vacala had not even bothered to appear at a hearing occasioned by his dilatory behavior, the chief judge also granted Basic's and Fanuc's motions for costs and fees associated with the motion and hearing—about $2000 each. The judge held it was "clear" that "this case was resolved" and Vacala had "not articulated any possible way that there would be any possible coverage issues that would entitle him to any type of indemnity." The judge observed that "we've . . . got a rule around here. If you start the fight you have to come to the fight." Vacala was the "prime mover" behind the stalled settlement, the judge noted, yet he failed to show up at the hearing to defend his position. The sanctions were imposed against Vacala, not Richards Brick.

Vacala moved to alter or amend the judgment pursuant to Rule 59 of the Federal Rules of Civil Procedure. He argued that the other parties had changed the terms of the settlement and that Rule 11 of the Federal Rules of Civil Procedure did not justify the sanctions against him. Chief Judge Murphy held another hearing, this time by telephone. He reiterated that the parties—including Richards Brick, through Attorney Anderson—had agreed to settle all claims and it was Vacala who later sought to change the terms of the settlement. The chief judge also stuck to his decision that sanctions were justified because Vacala's behavior had unnecessarily prolonged the litigation. Vacala had forced opposing counsel to travel to East

St. Louis from Chicago for a hearing Vacala did not even attend, a hearing occasioned by an indefensible (and undefended) reading of the initial settlement. Vacala had his chance to explain why his position on insurance coverage was meritorious and he failed to do so.

## II. Analysis

Vacala's opening brief on appeal challenged both the sanctions imposed against him and the district court's enforcement of the settlement agreement. In his reply brief, however, he swore off the second issue no fewer than three times. Then, at oral argument, he purported to reassert his challenge to the enforcement of the settlement agreement. (We can see why opposing counsel and the district court became frustrated with Vacala's litigation conduct.) Vacala has conceded the settlement issue; we will not address it.

Vacala contends the district court improperly sanctioned him under Rule 11. Some of the particulars of his argument are frivolous (for instance, his contention that Chief Judge Murphy did not explain the sanctionable conduct), but as a general matter, it is true that Rule 11 procedures were not followed here. That is because Vacala was not sanctioned under Rule 11.

Rule 11, of course, covers a particular type of attorney misconduct associated with the signing of pleadings, written motions, and other papers filed with the court, none of which were the vehicle of Vacala's misbehavior. FED. R. CIV. P. 11; *see also Christian v. Mattell*, 286 F.3d 1118, 1131 (9th Cir. 2002); *Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 37 n.5 (2d Cir. 1995). No one ever mentioned Rule 11 until Vacala, in his Rule 59 motion to alter or amend the judgment, said he *assumed* the sanctions were imposed under Rule 11.

It is unfortunate that none of the parties specified the statute or rule under which they were pursuing sanctions,

and also that the district court neglected to cite the specific basis for the award of attorneys' fees in this case. Chief Judge Murphy commented, during the hearing on Vacala's Rule 59 motion, that the sanctions were the result of a motion under Rule 11. We think he simply misspoke. He was responding to Vacala's argument that the sanctions were improperly imposed sua sponte rather than pursuant to motion. The parties had in fact moved for their costs and fees, and the chief judge mistakenly characterized these as Rule 11 motions. That detail was incorrect, but the gist of the chief judge's observation was not: Vacala had ample notice that his opponents were seeking sanctions and he was given an opportunity to respond, which is all that was required in this situation. *See, e.g.*, *Jolly Group, Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006); *Johnson v. Cherry*, 422 F.3d 540, 549 (7th Cir. 2005); *Larsen v. City of Beloit*, 130 F.3d 1278, 1286 (7th Cir. 1997); *Kapco Mfg. Co. v. C&O Enters., Inc.*, 886 F.2d 1485, 1494-95 (7th Cir. 1989). At any rate, the chief judge did not mention Rule 11 until Vacala sent the discussion down that wrong path *after* he was sanctioned, during the Rule 59 motion. The chief judge's slip does not change the nature of the sanctions imposed.

It would have been better had the parties and the district court explained the legal basis for the sanctions from the beginning. An advocate's job is to make it easy for the court to rule in his client's favor; at a minimum, this means stating the legal grounds for a motion. When applying for sanctions for litigation misconduct, a party should identify the authority being invoked for the award; the district court should explain the authority under which the sanctions are imposed. District courts will make clearer records if the attorneys do their jobs as advocates.

Despite this oversight by the court and counsel, the district court's power to impose the sanctions in this case is

not in doubt. Two sources of authority fit this situation: either 28 U.S.C. § 1927 or the inherent power of the court. Since the inherent power of the court "is a residual authority, to be exercised sparingly" and only when other rules do not provide sufficient basis for sanctions, *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co.*, 313 F.3d 385, 390-91 (7th Cir. 2002), we will presume these sanctions to have been the product of § 1927. Either way, we review an award of sanctions for an abuse of discretion, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991); *Kapco Mfg.*, 886 F.2d at 1491, and we see none here.

Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Some of our cases say either subjective or objective bad faith is a prerequisite for awarding sanctions pursuant to § 1927, *see, e.g.*, *Moriarty v. Svec*, 429 F.3d 710, 722 (7th Cir. 2005), while others seem to suggest otherwise, *see, e.g.*, *Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1202 (7th Cir. 1987); *Westinghouse Elec. Corp. v. NLRB*, 809 F.2d 419, 425 (7th Cir. 1987). We read the cases as drawing a distinction between subjective and objective bad faith. Subjective bad faith, the more difficult type of bad faith to prove, is not always necessary. *Hill*, 814 F.2d at 1202; *Westinghouse*, 809 F.2d at 425. Subjective bad faith must be shown only if the conduct under consideration had an objectively colorable basis. *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985). The standard for objective bad faith does not require a finding of malice or ill will; reckless indifference to the law will qualify. *Id.* "If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *Riddle & Assocs. P.C. v. Kelly*, 414 F.3d

832, 835 (7th Cir. 2005) (quoting *Kapco Mfg.*, 886 F.2d at 1491); *see also In re TCI*, 769 F.2d at 445.

Vacala's conduct unquestionably satisfies the standard for objective bad faith. He had nothing to do with the settlement negotiations, which were handled by his cocounsel, Attorney Anderson. The draft settlement agreement, approved by Anderson, eliminated any claims Richards Brick thought it had against the insurers for Basic and Fanuc. The parties agreed to:

> *conclude all the various disputes, controversies, claims and causes of action of any kind* which DAL POZZO or any person, firm, corporation or other entity have, may have or claim to have, directly or indirectly, against BASIC, FANUC, . . . RICHARDS, *and/or their insurers*, or *which in any way relate to or derive from, directly or indirectly, the claims of DAL POZZO* against all others, . . . . (Emphasis added.)

This language is comprehensive. Richards Brick and every other party to the litigation released *all* disputes, claims, and causes of action by *any* firm or corporation against Basic or Fanuc *and* their insurers. When given an opportunity to tell the court why he thought this settlement language did not abandon Richards Brick's insurance coverage "claims," Vacala skipped the hearing. Any reasonably careful attorney would know not to pursue this obviously unsound path. The district court's conclusion that Vacala's conduct was sanctionable was not an abuse of discretion.

By the time Vacala tried to defend his position at the hearing on his Rule 59 motion, it was too late. Motions to alter or amend judgments are no place to start giving evidence that could have been presented earlier. *Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995); *see also Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *Vasapolli v. Rostoff*, 39 F.3d 27, 36 (1st Cir.

1994) ("Unlike the Emperor Nero, litigants cannot fiddle as Rome burns."). Litigation must sometime come to an end, and the limit on Rule 59 motions advances that goal. Beyond that basic point, Vacala had no reason whatsoever to challenge his sanctions on Rule 11 grounds; it is inapplicable to these circumstances.

Vacala's appeal is likewise frivolous. Vacala has raised only procedural shortcomings under Rule 11; he has not argued that his behavior was defensible. The Rule 11 argument, we have pointed out, has no objective legal basis. Besides his baseless appeal of the sanctions, Vacala wasted the time of opposing counsel and this court by purporting to appeal the enforcement of the settlement, only to abandon the issue emphatically in his reply brief. The appeal of sanctions alone is frivolous, but the pursuit and abandonment of an appeal on the settlement issue is problematic too. Vacala's opponents would not have pressed their position if they had known this appeal concerned only a meager $4000 in sanctions; they told us so at oral argument and filed motions for frivolous appeal sanctions under Rule 38. Vacala's opposing counsel spent time on this appeal because the settlement—not the sanctions—was valuable to their clients. Vacala continues to needlessly and frivolously multiply the proceedings in this case. Accordingly, pursuant to Rule 38, we direct Vacala to pay his opponents' reasonable fees and double costs on this appeal. *See Hill*, 814 F.2d at 1202 (Rule 38 may be invoked where counsel makes "objectively groundless legal arguments for which a monetary sanction is proper in order to protect this court's ability to serve litigants with meritorious cases and in order to make lawyers give thoughtful consideration to whether there are grounds for an appeal before filing an appeal.").

AFFIRMED WITH SANCTIONS.

A true Copy:

    Teste:

                  _____
                  *Clerk of the United States Court of*
                  *Appeals for the Seventh Circuit*