In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3027

ZACHARY MULHOLLAND,

*Plaintiff-Appellant*,

*v.*

MARION COUNTY ELECTION BOARD,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:12-cv-01502 — **Sarah Evans Barker**, *Judge.*

ARGUED FEBRUARY 12, 2014 — DECIDED MARCH 20, 2014

Before POSNER, FLAUM, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* The two major political parties in
Marion County, Indiana, both follow a long tradition of
"slating" their preferred candidates in primary elections. Those
candidates have the financial and organizational backing of
party leadership, and the parties therefore have an interest in
preventing confusion among voters as to who supports whom.
Accordingly, Indiana's "anti-slating" statute makes it a crime
to distribute a list endorsing multiple political candidates

during a primary election unless all such candidates have given their written consent. See Ind. Code § 3-14-1-2(a). More than a decade ago, the anti-slating law was challenged as violating the First Amendment. The plaintiff in that case won a federal injunction against the statute's future enforcement and a consent decree in which all parties stipulated and the court declared that the law was facially unconstitutional. *Ogden v. Marendt*, No. 1:03-cv-415 (S.D. Ind. Aug. 29, 2003), EFC No. 40.

One of the defendants then was the same defendant before us today: the Marion County Election Board. Having apparently changed its views on the statute's validity, the Board enforced it against a candidate running for state representative in the 2012 primary. That candidate, plaintiff Zachary Mulholland, has sued to enjoin further Election Board proceedings related to the slating violation and to enjoin the statute's future enforcement. The district court dismissed the case under the abstention doctrine of *Younger v. Harris*, 401 U.S. 37 (1971), citing a still-ongoing Election Board investigation. We reverse for two reasons. First, the Election Board's investigation is too preliminary a proceeding to warrant *Younger* abstention, at least in the wake of *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584 (2013). Second, even if *Younger* abstention were theoretically available after *Sprint*, the previous final federal judgment against the defendant Election Board holding the same statute facially unconstitutional would still amount to an extraordinary circumstance making *Younger* abstention inappropriate.

I.   *Factual and Procedural Background*

On the morning of May 8, 2012, as polling places opened to primary voters across Indiana, candidate Zachary Mulholland faced a steep climb in his bid to represent the state's 100th District in the Indiana House of Representatives. Located on the east side of Indianapolis, the district had been held by the retiring Democratic incumbent for all but two of the previous thirty-eight years. Mulholland was running as a Democrat, but he had failed to win the "slating," the endorsement of the county party's leadership. He now faced the party's slated candidate.

Mulholland had nevertheless kept up his fight for the nomination. The morning of the primary, he and a number of campaign volunteers went to polling places to make last-minute appeals to voters. They handed out copies of a flyer listing the names and pictures of five candidates under the heading "Vote Democrat." These candidates were Barack Obama for President, Joe Donnelly for U.S. Senate, André Carson for U.S. Representative, John Gregg for Governor, and Zach Mulholland for State Representative. The flyer noted at the bottom that it was paid for by Hoosiers for Zachary Mulholland. No party has suggested in this appeal that any information on the flyer was fraudulent or untrue.

Yet the flyers were illegal under Indiana law, as Mulholland soon learned. At the county level, elections in Indiana are overseen by election boards comprising one elected clerk of the circuit court and two members, one from each major party, appointed by the clerk. Ind. Code § 3-6-5-2. Alerted to the offending materials on the morning of the

primary, the Marion County Election Board held a brief meeting in which the members reviewed the flyer and unanimously agreed that Mulholland had violated state election law. The Election Board issued an order to that effect and authorized its special deputies to seize the flyers. Later that day, Mulholland and the Election Board's chair discussed the order by telephone. The contents of their conversation are disputed, but the order remained in place and the rest of Mulholland's flyers were either confiscated or never distributed. Mulholland ultimately lost the primary. His opponent went on to win the general election.

The law criminalizing flyers like Mulholland's is Indiana's anti-slating statute, which makes it a misdemeanor to publish or distribute a "slate" during a primary election without first receiving and then filing with the county election board the written consent of all candidates named on the slate. Ind. Code § 3-14-1-2(a)(2)–(3). The provision defines a "slate" as "a sample ballot, reproduction of an official ballot, or a listing of candidates having the names or numbers of more than one candidate for nomination at a primary election; and that expresses support for more than one of the candidates set forth on the ballot or list." § 3-14-1-2(b). That broad definition means that any candidate, interest group, or individual citizen who distributes a list expressing support for multiple primary candidates without their written permission can be charged with a crime. The effects are to benefit the party's slated candidates, who can easily coordinate the paperwork needed to promote a unified slate, and to increase the two parties' influence over the outcome of primary elections.

Because the anti-slating law restricts core political speech, the law has raised obvious constitutional concerns. In 2003 a candidate for office and a political action committee sued the Marion County Election Board and other defendants alleging that the statute violated the free speech clause of the First Amendment. Then-District Judge Tinder found that the plaintiffs had shown they were likely to succeed on the merits, and he granted their motion for a preliminary injunction. *Ogden v. Marendt*, 264 F. Supp. 2d 785 (S.D. Ind. 2003). Applying strict scrutiny, Judge Tinder found that the statute was not narrowly tailored to advance the state's legitimate interests in preventing campaign fraud or maintaining the stability of the two-party system. The state's putative interest in protecting candidates from being associated with supporters they would rather disown was not a compelling justification for suppressing political speech. Soon after the injunction was issued, the parties settled. The court approved a final judgment in which all sides stipulated that the statute "is declared facially unconstitutional," and the court enjoined the Election Board from enforcing it against the plaintiffs.

Mulholland was not a plaintiff in *Ogden* and was not shielded by the court's injunction, but he contends the *Ogden* judgment rendered the anti-slating law a dead letter and that it violates the First Amendment in any event. On May 30, 2012, a few weeks after his primary defeat, Mulholland sued the Election Board in state court in Marion County for an injunction against future enforcement of the statute and for damages for the cost of his confiscated materials. After five months, the case had gone nowhere. The Election Board issued a new order scheduling a meeting to "hear from all interested persons"

about "the acts and events occurring on May 8 … and take such additional action as warranted by the evidence presented." The Election Board moved the state court to stay proceedings, arguing that the new Board hearing would provide the court with a more complete factual record and might lead the Board to modify its initial order. Mulholland at first opposed the motion, but after filing the present lawsuit in federal court, he withdrew his opposition and the state court stayed its proceedings. The Election Board then postponed indefinitely its scheduled meeting, leaving the federal suit as the sole active forum for the parties' dispute.

Mulholland's federal complaint seeks to enjoin both future enforcement of the anti-slating statute and the Election Board's pending meeting. (The Board has threatened to compel his attendance by subpoena. See Ind. Code § 3-6-5-27.) He has standing to contest future enforcement of the statute because he intends to run in later elections, and the case is not moot because "political candidacy, like pregnancy, is capable of repetition yet evades review" under ordinary mootness rules. *Ogden*, 264 F. Supp. 2d at 790 n.5, citing *Majors v. Abell*, 317 F.3d 719, 722 (7th Cir. 2003); see also *Norman v. Reed*, 502 U.S. 279, 287–88 (1992) (dispute over election law not moot because it was capable of repetition and would otherwise evade review). Mulholland also contests the Election Board's ability to subpoena him to the meeting insofar as the subpoena is based on the anti-slating statute he contends is unconstitutional.

The Board moved to dismiss the case under *Younger*, asserting that the federal district court should defer to the ongoing proceedings in state court and before the Election

Board. The district court agreed, holding that any injunction limiting the Board's ability to subpoena Mulholland to a hearing about the slating violation would "clearly interfere with the ongoing state administrative proceedings." The district court found none of the recognized exceptions to the *Younger* doctrine applied here. The court rejected Mulholland's argument that the statute was "flagrantly and patently" unconstitutional. Although the defendant Board had previously stipulated to the law's constitutional infirmity, the court viewed that consent decree as operative only between the Board and the previous plaintiffs. The court dismissed the case, and Mulholland has appealed.

II. *The Scope of Younger Abstention*

The abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971), is an exception to the general rule that federal courts must hear and decide cases within their jurisdiction. The doctrine reflects a concern that federal interference with certain types of important state proceedings is unwise and unnecessary in a system of dual sovereigns, *id.* at 44, and it requires that federal courts dismiss such cases rather than intervene in state affairs. As the Supreme Court has recently emphasized, *Younger* abstention is called for in exactly three classes of cases: where federal jurisdiction would intrude into ongoing state criminal proceedings, or into certain civil enforcement proceedings (judicial or administrative) akin to criminal prosecutions, or into civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013).

Outside these three "exceptional" situations, *Younger* abstention is not appropriate even when there is a risk of litigating the same dispute in parallel and redundant state and federal proceedings. *Id.* at 591; *Nader v. Keith*, 385 F.3d 729, 732 (7th Cir. 2004). (The problems posed by parallel state and federal proceedings are managed under the narrower abstention doctrine of *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), which ordinarily calls for a stay rather than dismissal when it applies, but still prevents duplication.)

In this case, the district court viewed the scheduled Election Board meeting and ongoing state lawsuit as the type of civil enforcement proceedings that are close enough to a criminal prosecution to warrant *Younger* abstention. See, *e.g.*, *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) (administrative proceeding against attorney for violation of state ethics rules); *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975) (civil enforcement of public nuisance statute). We review this decision *de novo*. *Forty One News, Inc. v. County of Lake*, 491 F.3d 662, 665 (7th Cir. 2007).

In our review under *Younger*, Mulholland's state suit plays no role. Such parallel requests for relief by the same party are not subject to *Younger* abstention. We focus instead on the proceedings before the Board. See *Sprint*, 134 S. Ct. at 591–92 (fact that federal plaintiff also sought state court review of agency decision did not itself implicate *Younger*; proper focus was on the agency proceeding); *New Orleans Public Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 369 (1989) (same).

We must determine, therefore, whether the Election Board's planned hearing on Mulholland's violation of the anti-slating statute calls for *Younger* abstention. Citing language in *Middlesex*, we have said that abstention is required when such state civil proceedings are "judicial in nature," involve important state interests, and offer an adequate opportunity to review the federal claim. *E.g.*, *Majors v. Engelbrecht*, 149 F.3d 709, 711 (7th Cir. 1998). This is the approach taken by the district court and largely followed in the parties' briefs.

After the district court's decision and while briefing in this appeal was already underway, the Supreme Court rephrased the question, at least to some extent, in *Sprint*. There the Court reversed an appellate decision that had applied the same reading of *Middlesex* to hold that an adjudicative proceeding before the Iowa Utilities Board warranted *Younger* abstention. As the unanimous Court explained, the "three *Middlesex* conditions recited above were not dispositive; they were, instead, *additional* factors appropriately considered by the federal court before invoking *Younger*." 134 S. Ct. at 593. These factors remain relevant, but the critical consideration in evaluating a state civil proceeding is how closely it resembles a criminal prosecution. "Divorced from their quasi-criminal context," the Court wrote, "the three *Middlesex* conditions would extend *Younger* to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest." *Id.*

The planned Election Board meeting in this case is not the type of quasi-criminal proceeding that would warrant *Younger* abstention, at least after *Sprint*, which involved an agency adjudication of state law that was initiated by one private party

against another and that presented no possibility of criminal penalty. The Board's hearing in this case has a few features that might arguably give it a somewhat closer resemblance to a criminal adjudication. The hearing was initiated by the government to look into a violation of state law, and the Board has coercive authority to subpoena witnesses. But the Board's authority to sanction offenders is extremely limited—far less than the state proceedings that have warranted *Younger* abstention in other cases. The Board's hearing could lead only to a recommendation of prosecution to a county prosecuting attorney or the state attorney general. Ind. Code § 3-6-5-31. Cf. *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 624–25 (1986) (*Younger* abstention applied to pending state administrative hearing that could result in order requiring reinstatement of employee with backpay); *Middlesex*, 457 U.S. at 427 (same where attorney disciplinary hearing could result in professional sanctions).

The possibility that a state proceeding may lead to a future prosecution of the federal plaintiff is not enough to trigger *Younger* abstention; a federal court need not decline to hear a constitutional case within its jurisdiction merely because a state investigation has begun. See *Steffel v. Thompson*, 415 U.S. 452, 454, 472 (1974) (*Younger* does not prevent federal declaratory relief "when a state prosecution has been threatened, but is not pending"); *520 South Michigan Ave. Associates, Ltd. v. Devine*, 433 F.3d 961, 963 (7th Cir. 2006) (suggesting that prosecution must be "imminent" before court will abstain). The threat of prosecution is especially speculative where as here the investigating agency must first hand the matter over to a separate

prosecutor who has complete discretion over whether to bring the case.

Even if the Election Board could sanction Mulholland directly, we might consider these proceedings to be at too preliminary a stage to warrant federal deference. See *Louisiana Debating & Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1490 (5th Cir. 1995) (no abstention where agency notified plaintiffs of citizen complaint but had not started investigation); *Telco Communications, Inc. v. Carbaugh*, 885 F.2d 1225, 1228–29 (4th Cir. 1989) (no abstention where agency notified plaintiff of specific charges and held informal meeting, but investigation was still unfolding). The question would be close in this case, in part because the record is so vague as to the purpose of the Board's planned meeting. In filings before the state court, the Board explained that "Mulholland does not know what will happen at the Election Board's hearing … . And the Election Board does not know what will happen at the Election Board's hearing … . At this time, no one knows."

We don't know either. Given the uncertainty on that point and the lack of prosecutorial power for the Election Board, we see little reason for a federal court to abstain while waiting to see if the Board refers the anti-slating violation to a prosecutor who might then pursue the case. In its brief, the Election Board implies that Mulholland might have broken other election laws as well. If the Board believes that is the case, it is of course free to investigate those violations while the federal court hears a challenge to the anti-slating provision. *Younger* is irrelevant in that scenario.

The Election Board's other explanation is that it is simply offering Mulholland the process he says he was denied on election day, and that it may ultimately modify its original order. If that's the case, then the meeting's purpose would be remedial rather than coercive, see *Dayton*, 477 U.S. at 627 n.2, so it would not be the sort of quasi-criminal proceeding that could require *Younger* abstention.

III. *Extraordinary Circumstances*

If all this were not enough to defeat *Younger* abstention, the second independent reason for not abstaining is that the Election Board is attempting to enforce a statute that has already been held unconstitutional in a final judgment against the Board itself. *Younger* therefore would not apply even if the planned Board meeting were the sort of adjudicative proceeding that would otherwise call for abstention.

The *Younger* exception to the rule that federal courts hear the cases before them is at bottom an equitable doctrine, and it contains its own equitable exceptions. The abstention doctrine does not prevent federal courts from enjoining enforcement actions that involve "bad faith, harassment, or a patently invalid state statute." *Sprint*, 134 S. Ct. at 591, citing *Younger*, 401 U.S. at 53–54. These exceptions are narrow, and the Supreme Court has "unequivocally held that facial invalidity of a statute is not itself an exceptional circumstance justifying federal interference with state criminal proceedings." *Huffman*, 420 U.S. at 602, citing *Younger*, 401 U.S. at 53–54 ("the possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good-faith attempts to enforce it," but bad faith, harassment, or another "unusual circumstance"

could call for equitable relief); see also *Pincham v. Illinois Judicial Inquiry Bd.*, 872 F.2d 1341, 1350 (7th Cir. 1989) ("the Courts Commission could well construe the rules in a manner compatible with the constitution").

In this case, however, the Election Board's attempt to enforce the anti-slating law against Mulholland goes beyond the mere "possible unconstitutionality of a statute on its face." The law was declared facially unconstitutional by a federal court and its enforcement was enjoined in a final judgment against the Board in *Ogden* in 2003. The district court correctly pointed out that the *Ogden* injunction was limited to enforcement of the anti-slating law against the plaintiffs in that case. That analysis overlooks, however, the significance of the declaratory portion of the *Ogden* judgment that declared the anti-slating statute facially unconstitutional.

Despite this ruling, the Election Board invoked the law in 2012 against Mulholland, seizing the campaign literature of a candidate challenging his party's slate in the primary. The Board now seeks on the basis of the same statute to compel Mulholland's attendance at further administrative proceedings, the purpose of which remains murky. This shaves very close to harassment or bad faith prosecution. The Election Board members are well aware of the *Ogden* litigation and resulting injunction. And yet the Board decided to resurrect the law for use against Mulholland.

The Election Board contends that, although the law was found unconstitutional in *Ogden*, *Younger* abstention is appropriate because the law is not "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence

and paragraph, and in whatever manner and against whomever an effort might be made to apply it." See *Younger*, 401 U.S. at 53–54, quoting *Watson v. Buck*, 313 U.S. 387, 402 (1941). That is not the test. *Younger* quoted this language as a sufficient condition for rejecting abstention, not a necessary condition, and the Court was referring to a situation in which a law's unconstitutionality seems obvious but has not yet been decided by a court.

Even granting that the Indiana anti-slating statute does not plumb such hyperbolic depths of unconstitutional offense, the Election Board's attempt to enforce a law that a federal court has already told the Board in a final judgment is unconstitutional represents the sort of "other unusual circumstance that would call for equitable relief." 401 U.S. at 54. Stated in terms of the equitable principles upon which *Younger* is based, the costs to comity and our federalism of enjoining state proceedings are significantly lessened where a federal court has previously held the same law facially unconstitutional in a final judgment against the same defendant.

We reject the Election Board's oxymoronic argument that the judgment in *Ogden* should be read to mean that the statute is facially unconstitutional only as to the *Ogden* plaintiffs. We have not encountered before the idea of facial unconstitutionality as applied only to a particular plaintiff. Facial unconstitutionality as to one means facial unconstitutionality as to all, regardless of the fact that the injunctive portion of the judgment directly adjudicated the dispute of only the parties before it. See *John Doe No. 1 v. Reed*, 130 S. Ct. 2811, 2817 (2010) (relief would "reach beyond the particular circumstances of these plaintiffs" and to that extent must "satisfy our standards for a

facial challenge"); *Sabri v. United States*, 541 U.S. 600, 609 (2004); *Ezell v. City of Chicago*, 651 F.3d 684, 697–98 (7th Cir. 2011).

The Election Board now says it never would have agreed to the *Ogden* consent decree if it had thought the result would apply to other candidates. That subjective misunderstanding of the law is not relevant. The final judgment was unambiguous: the anti-slating provision "is declared facially unconstitutional." See *In re Trans Union Corp. Privacy Litig.*, 741 F.3d 811, 816 (7th Cir. 2014) ("Litigants as well as third parties must be able to rely on the clear meaning of court orders setting out their substantive rights and obligations").

In the three categories of cases identified in *Sprint*, *Younger* abstention serves to reach an equitable accommodation of the states' interest in enforcing their own laws with the need for federal protection of federal rights. That balance tips decidedly toward federal adjudication when a federal court has previously held in a judgment against a state or local agency that the law is facially unconstitutional and the same agency then tries to enforce it regardless.

Because the district court erred in dismissing the case under *Younger*, we REVERSE that decision and REMAND for further proceedings, with the additional instruction that the district court consider promptly whether to issue a preliminary injunction against the Board, keeping in mind the primary election scheduled for May 6, 2014. Nothing in this opinion should be understood to prevent the Election Board from making any arguments it wishes to make about changes in applicable law or other circumstances preventing application of issue preclusion based on the *Ogden* final judgment. Such

arguments, though, will need to be raised in the federal court. The mandate shall issue immediately.[1]

---

[1] If Board members or their agents were to try to enforce the anti-slating statute against other parties at this point, such as in the May 2014 primary elections, we expect that this opinion and the *Ogden* judgment would make it difficult to invoke the defense of qualified immunity to a damages action under 42 U.S.C. § 1983.