In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 23-1183

ROUSEMARY VEGA and JESUS RAMOS,

*Plaintiffs,*

*v.*

THE CHICAGO BOARD OF EDUCATION, *et al.*,

*Defendants-Appellees.*

APPEAL OF: CARYN SHAW, ANNE SHAW, and DONALD VILLAR

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15-cv-3221 — **Gary Feinerman**, *Judge.*

_____

ARGUED NOVEMBER 3, 2023 — DECIDED JULY 29, 2024

_____

Before KIRSCH, JACKSON-AKIWUMI, and PRYOR, *Circuit Judges.*

JACKSON-AKIWUMI, *Circuit Judge.* Caryn Shaw, an attorney for the Plaintiffs in this case, allegedly assaulted opposing counsel Lisa Dreishmire after a heated deposition at the Chicago Board of Education building. When Dreishmire brought

the incident to the district court's attention, the court ordered briefing and held an evidentiary hearing to "get to the bottom" of it. The district court ultimately concluded that Shaw misled the court about the incident and her falsehoods unnecessarily prolonged the litigation. As a sanction for Shaw's conduct, the court removed her from the case and ordered "Plaintiffs' counsel"—a total of three attorneys—to reimburse Defendants for reasonable attorneys' fees and costs. Plaintiffs' counsel filed this appeal challenging those decisions. We affirm the district court's imposition of sanctions against Shaw but vacate the sanctions against the remainder of "Plaintiffs' counsel" for lack of notice.

**I**

In 2015, Plaintiffs Rousemary Vega and Jesus Ramos sued the Chicago Board of Education and various Board members and security officials. They alleged that the officials violated Vega's First Amendment rights by removing her from a public Board meeting and restricting her ability to attend subsequent meetings and violated Vega's and Ramos's rights under state law. We introduce the lawsuit for context, but the details are not relevant to this appeal. This appeal concerns the conduct of the parties' attorneys after a deposition in that litigation.

We recite the facts as developed by the parties before, during, and after the evidentiary hearing in district court. On July 13, 2017, Plaintiffs' attorneys Caryn Shaw and Donald Villar met at the Board's office building to depose Jadine Chou, the Board's Chief of Security. The Plaintiffs' third attorney, Anne Shaw, did not attend. Chou was represented by Lisa Dreishmire, the Assistant Deputy General Counsel for the Board. Also present were Kathleen Gamble, the Board's

Senior Assistant General Counsel, and Pauline Strohl, a court reporter from Urlaub Bowen & Associates. The deposition began around 2 p.m. and lasted until just after 6 p.m. By all accounts, it was a tense encounter, with the Board's attorneys objecting early, often, and at great lengths.

According to the witnesses at the evidentiary hearing, when the deposition ended, as Dreishmire was leaving the room, a frustrated Caryn Shaw screamed at her, asking "what the [f***] is your problem." Dreishmire reentered the room and instructed the court reporter to go back on the record. Shaw responded, "No, this is personal," and moved in Dreishmire's direction.

This is where the parties' recollection of the event diverges. Dreishmire told the district court that Shaw physically assaulted her by pushing her out of the room. Shaw said that she was simply trying to leave the room and made "unintentional contact" with Dreishmire on her way out. Whatever happened resulted in Dreishmire calling the police, pressing charges against Shaw, and filing a complaint with the Illinois Attorney Registration and Disciplinary Commission ("ARDC").

Dreishmire brought the incident to the district court's attention the following week in response to Plaintiffs' motion to compel the deposition of Jesse Ruiz, the former Board vice president. Dreishmire's response characterized Shaw's conduct as "criminal assault and battery." On the same day, Plaintiffs moved for unrelated discovery sanctions against Defendants' counsel, and described the incident as "unintentional contact."

The district court held a hearing on Plaintiffs' motion to compel on July 20, 2017. During that hearing, the court brought up the incident and stressed the need to "get to the bottom" of it. After the hearing, the court gave Plaintiffs the opportunity to respond to the assault allegations in their not-yet-filed reply brief in support of their motion to compel. Shaw took that opportunity to accuse Defendants' counsel of violating the rules of professional conduct and biasing the court by presenting the assault allegations. Shaw did not directly contest Dreishmire's allegations about what happened.

In September 2017, the district court held another hearing and asked about the status of the ARDC and police investigations into the incident. The court found that the incident was "important" and "serious," and prohibited Shaw and Dreishmire from participating in further depositions in the case. The court then scheduled an evidentiary hearing about the alleged assault.

The evidentiary hearing took place over two non-consecutive days in October and November 2017. Four witnesses testified: Dreishmire, Villar (Plaintiffs' second attorney), Strohl (the court reporter), and Chou (the deponent). On the first day of the hearing, Shaw expressed that she intended to testify. But by the time the district court reconvened for Day 2 of the hearing in November, Shaw had retained counsel who explained that she would not testify. Once all the evidence had been presented, the court informed the parties that they would be allowed to present any additional information in post-hearing briefs. Dreishmire's post-hearing brief deferred to the court on "the appropriate sanctions for Ms. Shaw's conduct and misrepresentations," but requested at least "the attorney's fees and costs incurred

as a direct result of Ms. Shaw's conduct." Several days later, Shaw submitted a brief in support of discovery sanctions against Dreishmire and the Board but did not respond to Dreishmire's request for sanctions.

On March 28, 2018, the district court issued the first sanctions order. *See Vega v. Chicago Bd. of Educ.*, No. 15 C 3221, 2018 WL 11587042 (N.D. Ill. Mar. 28, 2018). That order removed Shaw from the case, referred her for further disciplinary action, and informed the parties that a calculation of fees and costs would be forthcoming. The court found that "Shaw swore at Dreishmire and then intentionally pushed her with force sufficient to knock her backwards." *Id*. at *1. Additionally, the court found Shaw's description of the contact as "unintentional" to be false and vexatious. "As a sanction for her verbal and physical attack on Dreishmire," the court prohibited Shaw from participating as an attorney in the case and found that "Plaintiffs' counsel must reimburse Defendants for the reasonable attorney fees and costs they incurred in litigating the incident." *Id*. at *2.

Almost a month later, Shaw moved for reconsideration of the sanctions against her. The motion marked her first time contesting the sanctions after the evidentiary hearing. The court denied Shaw's motion on May 1, 2018. That same day, in light of the court's decision to sanction Shaw, Defendants petitioned for fees and costs. Plaintiffs objected to the fee request.

Four and a half years later, on December 28, 2022, the court entered the second sanctions order. That order required "Plaintiffs' counsel" to "reimburse Defendants $11,920.95 in attorney fees and costs." The court also overruled Plaintiffs' counsel's objections to the fee request. Plaintiffs' counsel had

argued that they did not have adequate notice of the sanctions, the sanctions were not warranted, and the court should have abstained from issuing the sanctions given the ongoing ARDC investigation.

Plaintiffs' counsel now appeal and raise four issues for our review: (1) whether the district court provided adequate notice of its intent to sanction "Plaintiffs' counsel," which includes not just Caryn Shaw, but also Anne Shaw and Donald Villar; (2) whether the sanctions were proper; (3) whether the district court was required to abstain in light of the ongoing state proceedings; and (4) whether the district court correctly calculated the monetary sanctions.

## II

Before we reach the issues for review, we must first address a jurisdictional issue: who are the parties taking this appeal? *See Gonzalez v. Thaler*, 565 U.S. 134, 147 (2012) (the requirements for notices of appeal are jurisdictional in nature). Appellants bring this appeal on behalf of "Plaintiffs' counsel," but Appellees (Defendants) maintain that only Caryn Shaw is a proper appellant. Appellees point out that Plaintiffs' notice of appeal in the district court, as well as their docketing statement and Rule 26.1 disclosure in this court, list only Caryn Shaw and Shaw Legal Services, Ltd., as appellants. Citing *Allen Archery, Inc. v. Precision Shooting Equipment, Inc.* 857 F.2d 1176 (7th Cir. 1988), Appellees maintain that the failure to list Donald Villar and Anne Shaw on the notice of appeal means that the two attorneys are not proper appellants. And Shaw Legal Services, Ltd. cannot be a proper appellant, Appellees argue, because the district court "did not identify that law firm by name in either of its sanctions orders" and "in the

Northern District of Illinois, a law firm may not appear as 'Plaintiffs' Counsel'".

Appellants appear to concede that the law firm is not a proper appellant because it was not specifically "named by the district court," but Appellants maintain that Anne Shaw and Donald Villar are proper appellants. We agree.

Federal Rule of Appellate Procedure 3(c)(1)(A) provides that a notice of appeal must "specify the party or parties taking the appeal by naming each one in the caption or body of the notice." The rule permits "an attorney representing more than one party [to] describe those parties with such terms as 'all plaintiffs,' 'the defendants,' 'the plaintiffs A, B, et al.,' or 'all defendants except X'." FED. R. APP. P. 3(c)(1)(A). But even when the notice fails to broadly define the prospective appellants, Rule 3(c)(7) offers a backstop by preventing courts of appeals from dismissing an appeal "for failure to name a party whose intent to appeal is otherwise clear from the notice." FED. R. APP. P. 3(c)(7). We have construed that rule liberally to protect the appeal rights of persons who have an interest in the orders being appealed. *See Foreman v. Wadsworth*, 844 F.3d 620, 625–26 (7th Cir. 2016); *see also Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, 42 F.4th 688, 693–94 (7th Cir. 2022).

In *Foreman*, for example, plaintiff's counsel failed to name himself in his notice of appeal challenging the district court's censure order. *Foreman*, 844 F.3d at 625. But the body of the notice clearly identified the issue on appeal as the district court's order censuring the plaintiff's counsel. *Id.* at 625–26. We allowed the attorney to proceed as an appellant because he was "the only party with an interest in" the censure order;

his intent to appeal was "clear from the notice." *Id*. at 626; FED. R. APP. P. 3(c)(7).

The same was true in *Cooper*, and the same is true here. In this case, the notice of appeal identifies the district court's sanctions order of March 28, 2018, order denying Plaintiffs' motion for reconsideration of May 1, 2018, and sanctions order of December 28, 2022, as the matters on appeal. Those orders were directed at "Plaintiffs' counsel" which, at the time the orders were written, included Caryn Shaw, Anne Shaw, and Donald Villar. The March 2018 order terminated Caryn Shaw's participation in the case, but none of the orders suggested that the remaining sanctions were limited to Caryn Shaw. Indeed, the orders referred broadly to "Plaintiffs' counsel," even though the district court knew how to single out Caryn Shaw when it wanted to limit a sanction to her. As members of "Plaintiffs' counsel," Anne Shaw and Donald Villar have "an interest in" the orders under review, such that their intent is "clear from the notice." *Foreman*, 844 F.3d at 626; FED. R. APP. P. 3(c)(7). Thus, we hold that Caryn Shaw, Anne Shaw, and Don Villar are all proper appellants in this appeal.

## III

With that jurisdictional dispute resolved, we turn to the issues Plaintiffs' counsel raise with the district court's sanctions orders and fee award.

We review a district court's imposition of sanctions for abuse of discretion. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991); *Dal Pozzo v. Basic Mach. Co., Inc.*, 463 F.3d 609, 614 (7th Cir. 2006). A district court abuses its discretion in imposing sanctions when it fails to explain the basis for the sanctions; when it does not properly notify the offender that it is

considering sanctions; or when its decision is based on an erroneous view of the law or a clearly erroneous assessment of the evidence. *Doe v. Maywood Hous. Auth.*, 71 F.3d 1294, 1299 (7th Cir. 1995).

## A

Plaintiffs' counsel challenge the sanctions orders on due process grounds, contending that the district court failed to afford them "the requisite notice and opportunity to respond to any potential sanctions." While we agree with the district court that Caryn Shaw had notice of potential sanctions for her conduct, we are unable to conclude that Anne Shaw and Don Villar had adequate notice, so we vacate the sanctions against them.

"Before a court may impose sanctions *sua sponte*, it must give the offending party notice of its intent to do so and the opportunity to be heard." *Johnson v. Cherry*, 422 F.3d 540, 551 (7th Cir. 2005); *The Jolly Group, Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006). "This is true whether the court is sanctioning a party pursuant to its authority under Rule 11, section 1927, or its inherent authority." *Johnson*, 422 F.3d at 551. General notices are "insufficient:" "the offending party must be on notice of the specific conduct for which she is potentially subject to sanctions." *Id.* at 551–52 (citing *In re Rimsat, Ltd.*, 212 F.3d 1039, 1045–46 (7th Cir. 2000)).

### 1. March 2018 Sanctions Against Caryn Shaw

The district court correctly found that Caryn Shaw was on notice of the potential for sanctions before the March 2018 order. That is true even though the district court never explicitly stated as much. We have explained that "[f]air notice can come from the court or an opposing litigant," so long as it

"inform[s] the person that he or she is in jeopardy of being sanctioned by the court." *Rimsat*, 212 F.3d at 1045. If previous interactions between the parties afforded the attorney "ample notice that his opponents were seeking sanctions and he was given an opportunity to respond," due process is satisfied. *Dal Pozzo*, 463 F.3d at 613.

Both the district court and Defendants gave Shaw adequate notice of the March 2018 sanctions. After learning about Shaw's alleged assault, the court emphasized its intent to "get to the bottom" of it and scheduled an evidentiary hearing exclusively devoted to the incident. The content of the hearing made clear that Defendants were seeking to hold Shaw accountable for her actions. The fact that Shaw enlisted an attorney to represent her at the second half of the hearing demonstrates that she understood similarly. Moreover, in their post-hearing brief, Defendants explicitly requested "appropriate sanctions for Ms. Shaw's conduct and misrepresentations." Given the parties' submissions and the district court's actions and remarks on the record, it should have been obvious to Shaw that sanctions were on the table.

Shaw sees the issue differently. She says she was not given an adequate opportunity to respond or "to vigorously defend herself" because the district court did not hold a separate hearing on whether she should be sanctioned. We are unpersuaded.

We have held that a separate hearing is not required before imposing sanctions, and a party who fails to request a separate hearing can waive any right to such a hearing. *Rimsat*, 212 F.3d at 1046. Even without a hearing, Shaw had several opportunities to respond or to defend herself in writing. She submitted her post-evidentiary hearing brief several days

after Defendants, which means she was aware of and had the opportunity to respond to Defendants' sanctions request. Shaw did not take that opportunity. It was not until the 2018 sanctions order that Shaw first contested the sanctions through a motion to reconsider. Notably, that motion did not raise the notice issues she now raises. Shaw was given an adequate opportunity to respond to the opposing party's request for sanctions; she was simply dilatory in doing so.

### 2. December 2022 Sanctions Against "Plaintiffs' counsel"

The December 28, 2022, sanctions against "Plaintiffs' counsel" require a different result. Other than Caryn Shaw, neither of the two other individuals under the umbrella of "Plaintiffs' counsel"—Anne Shaw and Don Villar—had notice that they were at risk of being sanctioned or the reason they might be sanctioned. Their actions were the subject of no hearing; Defendants did not seek sanctions against them; and they had no chance to respond to or defend themselves against sanctions. On appeal, Defendants admit that "[their] post-hearing brief is devoted entirely to whether *Caryn Shaw* should be sanctioned."

Still, Defendants insist that "Plaintiffs' counsel" had notice—specifically, in the March 2018 sanctions order. According to Defendants, that order provided notice by stating that "a monetary sanction would be forthcoming against 'Plaintiffs' Counsel'."

But that order cannot provide the requisite notice because that order does not simply preview sanctions against Plaintiffs' counsel, it also imposes them. The order states that "Plaintiffs' counsel *must* reimburse Defendants for the

reasonable attorney fees and costs they incurred in litigating the incident." *See Vega*, 2018 WL 11587042, at *2 (emphasis added). At that point, the sanctions decision against Plaintiffs' counsel had been made. It cannot be that an order imposing sanctions also provides notice of sanctions. Furthermore, the order states no basis for sanctioning other members of "Plaintiffs' counsel" besides Caryn Shaw. Given the lack of specificity about the conduct that apparently subjected Anne Shaw and Donald Villar to sanctions, they had no notice of the court's intent to impose sanctions and no opportunity to show cause why sanctions were not proper. *Johnson*, 422 F.3d at 549.

For these reasons, we conclude that the district court abused its discretion in sanctioning Plaintiffs' attorneys Anne Shaw and Donald Villar. We therefore vacate the sanctions against them.

**B**

Next, Shaw challenges the merits of the district court's decision to sanction her, arguing that her conduct was not sanctionable under 28 U.S.C. § 1927 or the court's inherent authority. We disagree.

Under § 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Our precedent defines "vexatiously" as either "subjective or objective bad faith." *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (7th Cir. 1992). The standard for imposing sanctions under the court's inherent authority is similar: the court must find that the party to be sanctioned "willfully abused the judicial process or otherwise conducted litigation

in bad faith." *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018). To invoke its inherent sanctions authority, the court must first make a finding that the sanctioned party engaged in bad faith to obstruct the judicial process or bring about the violation of a court order. *Id.*

The district court found that Shaw engaged in bad faith when she lied to the court about how the alleged assault transpired. The court found that "the only reason the court and the parties engaged in the exercise of getting to the bottom of what happened after the deposition was Plaintiffs' counsels' representations in Plaintiffs' sanctions motion about what in fact happened."

These factual findings cannot be an abuse of discretion because the record amply supports them. Witnesses for both sides—Villar, Strohl, and Dreishmire—testified that Shaw initiated the encounter by swearing at Dreishmire as Dreishmire was leaving the deposition room. And most of the witnesses testified that Shaw physically touched or pushed Dreishmire. This testimony, which the district court found credible, undermines the timeline of events that Shaw presented to the court in her first sanctions motion and the subsequent hearings. For example, Shaw described the incident as "unintentional contact" in her motion for discovery sanctions; she misled the court about how the incident started at the July 2017 hearing; and she misled the court again about the gravity of the incident, calling it "an inadvertent brushing" in her opening statement at the October 2017 evidentiary hearing. Based on these statements, the court reasonably found that Shaw's depiction of the event was contrary to the weight of the evidence.

Shaw contends that her conduct was not vexatious because she was acting on the information she had available when she first described the incident to the court. This argument is completely implausible. *See Walter v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir. 1988) (conduct is sanctionable when it is "without a plausible legal or factual basis and lacking in justification"). We agree with the district court that Shaw "must have known that her representations were false" because she was "a direct participant in the confrontation." That constitutes bad faith and vexatious conduct under our precedent, and the district court did not abuse its discretion in finding as much. *See Vega*, 2018 WL 11587042, at *2.

## C

Shaw next argues that the sanctions were improper because the district court should have held off on imposing them in light of the ongoing ARDC proceedings. Again, we disagree.

It is true, as Shaw points out, that attorney disciplinary proceedings in Illinois qualify as state-court proceedings for purposes of the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971). *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423, 432–34 (1982); *see also Storment v. O'Malley*, 938 F.2d 86, 88–90 (7th Cir. 1991). But that does not mean a district court is required to abstain whenever a party is involved in an ARDC proceeding. Abstention is not that categorical. To the contrary, before a court may invoke *Younger* abstention, there must first be the possibility that the federal court's action would impact the state court proceeding. *See, e.g., Younger*, 401 U.S. at 43 (describing abstention as a "longstanding public policy against federal court interference with state court proceedings"); *Middlesex*, 457 U.S. at 431

(abstention is appropriate to prevent "federal-court interference with pending state judicial proceedings").

In abstention cases, the emphasis is on interference. So the threshold question—even before the question of whether a court should abstain—is whether the federal action threatens to interfere with or intrude upon a state court proceeding. *See Mulholland v. Marion Cnty. Election Bd.*, 746 F.3d 811, 815 (7th Cir. 2014) (*Younger* abstention applies in "exactly three classes of cases: where federal jurisdiction would intrude into ongoing state criminal proceedings, or into certain civil enforcement proceedings (judicial or administrative) akin to criminal prosecutions, or into civil proceedings 'that implicate a State's interest in enforcing the orders and judgments of its courts.'") (quoting *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013)). Where there is no serious threat of interference, federal courts have a "virtually unflagging obligation" to resolve the questions before them. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

We demonstrated what a threat of interference looks like in *Storment*. In that case, an Illinois state court judge referred an attorney to the ARDC for disciplinary action after the attorney encouraged a witness to lie in a family court proceeding. *Storment*, 938 F.2d at 87–88. The attorney sued the ARDC in federal district court, alleging violations of the federal eavesdropping statute and seeking to enjoin the ARDC from considering certain pieces of evidence that the state court judge submitted along with the judge's complaint. *Id*. at 88. The district court granted the ARDC's request that the court abstain under *Younger* and *Middlesex*. *Id*. We affirmed that decision, and it is easy to see why: if the district court had enjoined the ARDC's use of the disputed evidence, the ARDC

would not have been able to conduct its investigation as it saw fit. Such intervention by the court would constitute a significant intrusion into the ARDC's investigatory process.

No similar threat of intrusion exists here. The district court's sanction for Shaw's conduct in the federal case would have no effect (let alone an adverse effect) on the ARDC's decision of whether and how to discipline Shaw. And the mere fact that the district court and the ARDC could run parallel investigations and each impose sanctions for Shaw's behavior is not enough to require abstention, for we have held that the mere existence of parallel proceedings does not require a district court to invoke *Younger*. *See Mulholland*, 746 F.3d at 816.

Because the district court could resolve the sanctions issue without offending comity and federalism, or posing any threat to the ARDC process, it was not required to abstain.

## D

Finally, Plaintiffs' counsel contend that the district court erred in calculating the award of legal fees by applying the wrong percentage deduction and by including costs for "excessive and vague billings." We see no error.

We review the district court's fee awards under a "highly deferential abuse of discretion standard." *REXA, Inc. v. Chester*, 42 F.4th 652, 673 (7th Cir. 2022). "A district court is accorded significant deference in matters concerning attorneys' fees because (1) the trial court possesses a superior understanding of the factual matters at issue; (2) that superior understanding outweighs the need for uniformity in fee awards; and (3) it is important to avoid, wherever possible, expending the resources associated with conducting a second major litigation concerning fees." *Id.* (citations omitted). But the district

court "still bears the responsibility of justifying its conclusions." *Id.*

Plaintiffs' counsel criticize the fee calculation to no avail. They raise no legal issues that would have required the district court to calculate or justify the fee it imposed any differently, and we cannot discern any. The district court explained that it examined Defendants' counsel's timesheets and found their rate of $250 per hour "eminently reasonable." The court also reviewed each line item request for reimbursement and ultimately deducted nearly 42.5 hours' worth of billing. We cannot say on this record that the district court's fee determination was an abuse of discretion.

## IV

In sum, we AFFIRM the district court's sanctions and fee award against Caryn Shaw but VACATE those decisions as to Anne Shaw and Donald Villar. The case is REMANDED for further proceedings consistent with this opinion.