# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-2658

_____

Minnesota Living Assistance, Inc., doing business as Baywood Home Care

*Plaintiff - Appellant*

v.

Ken B. Peterson, Commissioner, Department of Labor and Industry, State of Minnesota, in his official capacity; John Aiken, Interim Director of Labor Standards, Department of Labor and Industry, State of Minnesota, in his official capacity

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: June 13, 2018
Filed: August 8, 2018

_____

Before GRUENDER, ERICKSON, and GRASZ, Circuit Judges.

_____

GRUENDER, Circuit Judge.

This case involves two sets of proceedings. In the first, the Minnesota Department of Labor and Industry ("DLI") brought an administrative action against

Minnesota Living Assistance, Inc. ("Baywood") for failing to pay overtime compensation to companionship-services employees in violation of the Minnesota Fair Labor Standards Act ("MFLSA"). In the second, the one before us today, Baywood sued in federal court the Commissioner and the Director of Labor Standards at the DLI, arguing that the federal Fair Labor Standards Act ("FLSA") preempts the MFLSA and that Baywood therefore need not pay state penalties for any MFLSA violation. The district court[1] found that the *Younger* doctrine required it to abstain while the state proceeding was pending and dismissed the case. Because we find abstention appropriate, we affirm.

## I.

Baywood is a Minnesota corporation that employs domestic-service workers who provide companionship services.[2] The FLSA and the MFLSA both provide requirements regarding the minimum wage and the maximum hours per week that an individual can work before an employer is required to pay overtime compensation. But during the relevant time period, there were two pertinent differences between the statutes: (1) the FLSA standards were generally more protective than the MFLSA, *compare* 29 U.S.C. §§ 206(a)(1)(C), 207(a)(1), *with* Minn. Stat. §§ 177.24, subdiv. 1(b) (2012), 177.25; and (2) the FLSA exempted companionship-services employees from protection, whereas the MFLSA did not, *compare* 29 U.S.C § 213(a)(15), *with* Minn. Stat. § 177.23, subdiv. 11.

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

[2]"[C]ompanionship services means the provision of fellowship and protection for an elderly person or person with an illness, injury, or disability who requires assistance in caring for himself or herself." 29 C.F.R. § 552.6. The MFLSA adopts the FLSA definition of companionship services. *See* Minn. Stat. § 177.23, subdiv. 11.

In 2014, a Baywood employee filed a complaint alleging that Baywood violated the MFLSA by failing to pay overtime compensation to companionship-services employees from March 2012 to March 2014. The DLI conducted an investigation into Baywood's practices and determined that Baywood had not paid its companionship-services employees the wages required by the MFLSA. The DLI issued a compliance order in May 2016. The order assessed a penalty of $1,000 for failure to keep records pursuant to Minn. Stat. § 177.30 and required Baywood to pay back wages of $557,714.44 in addition to liquidated damages of $557,714.44. The order also indicated that Baywood should cease its illegal practices and comply with the MFLSA.

Baywood contested the compliance order, so, in August 2016, the DLI initiated a contested case proceeding before an administrative law judge ("ALJ") at the Minnesota Office of Administrative Hearings. In June 2017, the ALJ issued a report recommending that the DLI Commissioner enforce the compliance order as to backpay and liquidated damages but that he deny it as to the determination that Baywood failed to keep accurate records.

While the proceeding before the ALJ was pending, but before the June recommendation, Baywood filed suit in federal district court seeking (1) a declaration that the FLSA preempts the MFLSA and (2) injunctive relief prohibiting the DLI from further processing, investigating, or adjudicating its claims against Baywood. The DLI moved to dismiss the complaint, arguing that the district court should abstain from exercising jurisdiction under *Younger v. Harris*, 401 U.S. 37 (1971). The district court granted the DLI's motion to dismiss under *Younger*.

## II.

We review the district court's decision to abstain under *Younger* for abuse of discretion. Whether *Younger* abstention is appropriate is a question of law, and the

district court abuses its discretion when it makes an error of law. *Geier v. Mo. Ethics Comm'n*, 715 F.3d 674, 678 (8th Cir. 2013) (citing *Plouffe v. Ligon*, 606 F.3d 890, 894-95 (8th Cir. 2010) (Colloton, J., concurring)). Although federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), exceptions to this obligation exist in limited circumstances. In *Younger v. Harris*, the Supreme Court held that, consistent with our nation's commitment to the principles of comity and federalism, a federal court should abstain from exercising jurisdiction in cases where there is a parallel, pending state criminal proceeding, so long as certain conditions are met. 401 U.S. 37, 43-46 (1971). Since *Younger*, the Supreme Court has issued a series of decisions that have clarified and expanded the *Younger* abstention doctrine. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013); *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans (NOPSI)*, 491 U.S. 350 (1989); *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982).

Three lines of inquiry for determining whether *Younger* abstention is appropriate emerge from these decisions. *See Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 192-93 (1st Cir. 2015) (distilling a three-part taxonomy from the Court's abstention analyses). First, does the underlying state proceeding fall within one of the three "exceptional circumstances" where *Younger* abstention is appropriate? *See Sprint*, 571 U.S. at 78. Second, if the underlying proceeding fits within a *Younger* category, does the state proceeding satisfy what are known as the "*Middlesex*" factors? *See id.* at 81 (discussing *Middlesex*). And third, even if the underlying state proceeding satisfies the first two inquiries, is abstention nevertheless inappropriate because an exception to abstention applies? *See NOPSI*, 491 U.S. at 367. We address these three lines of inquiry in turn.

-4-

A.

We begin by determining whether the underlying enforcement proceeding against Baywood fits within one of the three categories where *Younger* abstention applies. *Sprint*, 571 U.S. at 72-73, 78. *Younger* abstention is applicable only where the state proceeding qualifies as (1) a criminal prosecution, (2) a civil enforcement proceeding that is akin to a criminal prosecution, or (3) a proceeding implicating a state's interest in enforcing the orders and judgments of its courts. *Id.*

Here, the parties agree that a civil enforcement proceeding resembling a criminal prosecution is the only abstention category into which the DLI proceeding could fit. *Sprint* identified three important characteristics for recognizing a civil proceeding that resembles a criminal prosecution: (1) the action was initiated by the State in its sovereign capacity; (2) the action involves sanctions against the federal plaintiff for some wrongful act; and (3) the action includes an investigation, often culminating in formal charges. 571 U.S. at 79-80. In this case, the underlying proceeding meets all three criteria and thus falls within an applicable *Younger* category.

The DLI proceeding satisfies both the state-involvement and the investigation criteria because the action was initiated by the State, via the DLI, following an investigation into Baywood's failure to pay overtime wages to companionship-services employees. Baywood contests this conclusion by arguing that "the case was initiated by an employee complaint about Baywood's nonpayment of overtime," rather than the State. According to Baywood, because the case was initiated by an employee, the DLI merely "stepped in to settle the dispute between Baywood and its employees about overtime." Indeed, Baywood attempts to analogize the facts here to those in *Sprint*, where administrative proceedings were triggered by a private complaint. *See* 571 U.S. at 74. But this analogy falls short.

-5-

In *Sprint*, "[a] private corporation . . . initiated the action[,] [n]o state authority conducted an investigation into Sprint's activities, and no state actor lodged a formal complaint against Sprint." 571 U.S. at 80. Under those circumstances, the Supreme Court concluded that Iowa's authority was merely "invoked to settle a civil dispute between two private parties," and thus, the proceeding was not a civil proceeding akin to a criminal proceeding for purposes of *Younger*. *Id.* By contrast, here, the DLI conducted the investigation, issued the compliance order, and brought the contested case proceeding against Baywood before the ALJ to enforce Minnesota law. The DLI was not merely an arbiter of a private dispute. Thus, even though the investigation was triggered by an employee complaint, the underlying proceeding bears the first and third characteristics of a civil proceeding akin to a criminal prosecution.[3] *See Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 623-24, 625 (1986) (finding abstention appropriate even where the agency investigation was initiated by a private complaint); *see also Sirva*, 794 F.3d at 194.

The DLI proceeding also involves "sanctions for wrongful conduct." Baywood argues that the underlying proceeding is merely an administrative wage claim with no criminal analog, yet Baywood concedes that the MFLSA provides for criminal penalties in addition to the civil penalties pursued here. *See* Minn. Stat. § 177.32, subdiv. 1(7). Thus, the underlying proceeding resembles cases in which the Supreme

---

[3]Baywood also makes a related argument that because the proceeding *could have been* brought by a private party, *Younger* abstention is inappropriate. In other words, it suggests that *Younger* abstention is not applicable where a private cause of action is available. But neither *Dayton* nor *Sprint*, nor any circuit deciding cases in their wake, suggests that the presence of a private right of action renders abstention inappropriate. *See, e.g.*, *Sirva*, 794 F.3d at 194, 200 (applying *Younger* abstention even where a private cause of action was available). Therefore, we reject this argument.

Court affirmed the exercise of abstention where "state authorities also had the option of vindicating the[] policies through criminal prosecutions," but instead chose to pursue less severe civil sanctions. *Trainor v. Hernandez*, 431 U.S. 434, 444 (1977); *see also id.* at 449-50 (Blackmun, J., concurring) ("The propriety of abstention should not depend on the State's choice to vindicate its interests by a less drastic, and perhaps more lenient, route.").

Here, the DLI imposed significant liquidated damages in addition to backpay. Minn. Stat. § 177.27, subdiv. 7 (providing for the imposition of equal liquidated damages). These double damages function to sanction Baywood for its failure to pay overtime wages. *See Helvering v. Mitchell*, 303 U.S. 391, 400 (1938). Furthermore, the cease and desist order sought by the State operates to restrain Baywood's conduct going forward. Minn. Stat. § 177.27, subdiv. 7 ("If an employer is found by the commissioner to have violated [the MFLSA] . . . the commissioner shall order the employer to cease and desist from engaging in the violative practice . . . ."); *Wilson v. Commodity Futures Trading Comm'n*, 322 F.3d 555, 561 (8th Cir. 2003) (characterizing an agency's order to "cease and desist" as a sanction). Though not themselves criminal penalties, the sanctions sought support *Younger* abstention.

Because all three essential characteristics identified by *Sprint* are present here, the underlying proceeding qualifies as a civil proceeding akin to a criminal prosecution.

B.

Given that the DLI proceeding falls into one of the categories that triggers *Younger*, we now consider the three *Middlesex* factors as "additional factors appropriately considered by [a] federal court before invoking *Younger*." *See Sprint*,

-7-

571 U.S. at 81. Under *Middlesex*, we ask whether the state proceeding (1) is judicial in nature, (2) implicates important state interests, and (3) provides an adequate opportunity to raise constitutional challenges. 457 U.S. at 432.

Before the district court, Baywood challenged only the second factor, arguing that abstention was inappropriate because an important state interest was not implicated. On appeal, Baywood contests all three factors. "Ordinarily this court will not consider arguments raised for the first time on appeal," *see Wever v. Lincoln Cty.*, 388 F.3d 601, 608 (8th Cir. 2004), and Baywood offers no persuasive reason to deviate from our general practice, *see Weitz Co. v. Lloyd's of London*, 574 F.3d 885, 891 (8th Cir. 2009). Thus, we limit our analysis to whether the underlying proceeding implicates important state interests. *See Middlesex*, 457 U.S. at 432.

Here, Minnesota has an important interest in the application of its wage and hour laws. Indeed, "States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State." *Metro. Life Ins. Co v. Massachusetts*, 471 U.S. 724, 756 (1985). Taking our cue from the Supreme Court, we recognize that "States have traditionally regulated the payment of wages," and, "[a]bsent any indication that Congress intended [otherwise]," we are hesitant to "significantly interfere with the separate spheres of governmental authority preserved in our federalist system." *Massachusetts v. Morash*, 490 U.S. 107, 119 (1989) (internal quotation marks omitted). Under this view, the underlying proceeding satisfies the important-state-interest factor.

Baywood raises three counter arguments. First, it points to cases in which federal courts were found to be uniquely situated to adjudicate a claim even though it implicated a traditionally state-law matter. But those cases involved, at their core, non-state interests. *See Barzilay v. Barzilay*, 536 F.3d 844, 850 (8th Cir. 2008)

(addressing issues related to the Hague Convention on child abduction); *Ayers v. Philadelphia Hous. Auth.*, 908 F.2d 1184, 1195 n.21 (3d Cir. 1990) (focusing on the federal interest in allocating funds for HUD housing programs). Here, the state proceeding resolved a question of Minnesota wage and hour law. Second, Baywood claims that there can be no important state interest "when the state law has been preempted and the state does not have the authority to regulate." But this argument assumes preemption when the very purpose of our inquiry is to determine whether we can address preemption.[4] In any case, the mere *allegation* of preemption does not undermine the propriety of abstention. Third, Baywood claims that finding an important state interest in this case would be the equivalent of finding an important interest any time a state enacts and enforces its own laws. But this fear is unfounded. Here, the Supreme Court has specifically confirmed the importance of the state interest. *See Morash*, 490 U.S. at 119.

## C.

Because the underlying proceeding satisfies the first two layers of the abstention inquiry, we move to the final consideration: whether an exception to *Younger* applies. Even where the proceeding falls into a *Younger* category and satisfies the *Middlesex* factors, the Court in *NOPSI* left open the possibility that a "facially conclusive" claim of federal preemption may be sufficient to render abstention inappropriate. *See* 491 U.S. at 367. While many of our sister circuits have adopted such an exception to abstention, we have never addressed the question in those terms.[5] *See Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 880 (8th

---

[4]To the extent that Baywood argues facial preemption, we address that issue in the next section.

[5]We need not decide today whether this exception is a required part of the abstention analysis because it does not affect the outcome of the case. We address it here for completeness.

Cir. 2002) (noting that *NOPSI* left open the possibility of an exception but declining to address the issue). The courts that have considered this question have found that preemption is facially conclusive if binding precedent already decided the issue or if it is otherwise "readily apparent." *See, e.g.*, *Woodfeathers, Inc. v. Washington Cty.*, 180 F.3d 1017, 1021-22 (9th Cir. 1999). In other words, preemption is not facially conclusive if it requires a "detailed analysis." *Colonial Life & Accident Ins. Co. v. Medley*, 572 F.3d 22, 27-28 (1st Cir. 2009); *GTE Mobilnet of Ohio v. Johnson*, 111 F.3d 469, 478 (6th Cir. 1997).

Here, Baywood asks the court to find facially conclusive its assertion that the FLSA preempted the MFLSA, even as to companionship-services employees, during the relevant time period. But Baywood cites no binding precedent deciding the issue, and we do not find preemption "readily apparent." Although the MFLSA generally adopted a lower minimum wage and higher maximum hours than did the FLSA, the FLSA exempted companionship-services employees from its protection. Resolving the preemption question would require a detailed analysis of the relative protections of the two statutes.[6] Thus, as the district court correctly determined, preemption is not facially conclusive, and no exception to *Younger* abstention applies.

---

[6]Indeed, similar preemption questions have generated conflicting results in other courts. *Compare, e.g.*, *Pac. Merch. Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1418-19 (9th Cir. 1990) (holding that the FLSA overtime provision did not preempt a state's overtime provision as applied to seamen, a group of individuals, like companionship-services employees, who are excluded from relevant FLSA protection), *with Coil v. Jack Tanner Co.*, 242 F. Supp. 2d 555, 558-59, 561 (S.D. Ill. 2002) (holding that the FLSA preempted a state's overtime law as applied to the same group of excluded workers).

## III.

For the foregoing reasons, we affirm the district court's decision to abstain.

_____