21-571-cv
Cavanaugh v. Geballe

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2021

(Argued: December 14, 2021        Decided: March 17, 2022)

Docket No. 21-571-cv

---

BRIAN CAVANAUGH,

*Plaintiff-Appellant*,

v.

JOSH GEBALLE, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF THE
DEPARTMENT OF ADMINISTRATIVE SERVICES OF THE STATE OF
CONNECTICUT,

*Defendant-Appellee*.

---

Before:

CABRANES, LOHIER, and LEE, *Circuit Judges*.

Plaintiff Brian Cavanaugh filed this federal action after a Connecticut
probate court issued an order recognizing the validity of a state lien against
Cavanaugh's interest in an estate.  The United States District Court for the
District of Connecticut (Dooley, J.) applied the doctrine established in
Younger v. Harris, 401 U.S. 37 (1971), and abstained from adjudicating
Cavanaugh's suit because of the ongoing state probate proceedings.  The
Younger abstention doctrine is an exception to the general rule that federal
courts must hear and decide cases within their jurisdiction.  Apart from
certain state civil enforcement proceedings, the doctrine applies only to those
civil proceedings "involving certain orders uniquely in furtherance of the

state courts' ability to perform their judicial functions." Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 78 (2013). This narrow class of cases does not include all ongoing state probate proceedings that concern the validity of a lien. Because the District Court ought not to have abstained pursuant to Younger, we **VACATE** and **REMAND** for further proceedings.

JOHN D. WATTS, Clinton, CT, *for Plaintiff-Appellant* Brian Cavanaugh.

KRISLYN M. LAUNER, Assistant Attorney General (Clare Kindall, Solicitor General, Maria A. Santos, Assistant Attorney General, *on the brief*), *for* William Tong, Attorney General of Connecticut, Hartford, CT, *for Defendant-Appellee* Josh Geballe.

LOHIER, *Circuit Judge*:

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given [to] them." Colorado River Water Conserv. Dist. v. United States, 424 U.S. 800, 817 (1976); see Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 77 (2013). Under the Younger abstention[1] doctrine, however, federal courts refrain from interfering with three categories of state proceedings. One of these is "pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." Sprint, 571 U.S. at 78 (cleaned up). In this appeal, which involves a state probate proceeding, we clarify that Younger abstention

---

[1] See Younger v. Harris, 401 U.S. 37 (1971).

applies only to a narrow class of state civil proceedings. Civil probate

proceedings are no more invulnerable to federal court interference than any

other state civil proceedings, unless the state order at issue protects the State's

administration of its judicial system or its process for compelling compliance

with the judgments of its courts. Because the District Court in this case

appears to have misunderstood the narrow scope of <u>Younger</u> to extend to

state probate proceedings that concern the validity of a lien, we vacate its

decision and remand for further proceedings.

## BACKGROUND

On October 1, 2011, Brian Cavanaugh, a Connecticut resident, became a

member in the HUSKY D health insurance program, a Medicaid health

insurance program provided by the Affordable Care Act and offered by

Connecticut to its residents. From October 3, 2011, through November 16,

2011, Cavanaugh received "rehabilitation and other services to help to attain

or retain capability for independence or self-care." Compl. ¶ 15. The parties

dispute whether federal or state funds were used to pay for these services.[2]

---

[2] According to Cavanaugh, HUSKY D provided coverage with funds the State received from the Federal Government, while the State maintains that it paid for Cavanaugh's healthcare expenses solely with state funds.

3

In July 2018 a probate proceeding was commenced in the Connecticut State Probate Court for the District of Saybrook to administer the will of Cavanaugh's deceased grandmother, DiBirma Burnham. The probate court determined that Cavanaugh was to inherit $44,565.96 under the will. In March 2019, however, the Commissioner of the Department of Administrative Services of the State of Connecticut (the "Commissioner" or "DAS") filed a state statutory claim against the Burnham estate under Connecticut General Statutes §§ 17b-93, 17b-94, 17b-224, 18-85b, 46b-129, and 46b-130, seeking the lesser of $57,915 or fifty percent of Cavanaugh's distributive share of the estate for repayment of the medical services Cavanaugh received in 2011.

The executor of Burnham's estate later filed a financial accounting report that listed the amounts each beneficiary, including Cavanaugh, was to receive from the estate. The report did not mention the Commissioner's lien, however, and it omitted from its list of proposed distributions $30,000 in cash bequests intended for Cavanaugh and his brother. The Commissioner objected to the financial accounting report. The objection, together with the discrepancies between the will and the proposed distributions, prompted the

4

probate court to hold a hearing attended by the executor of Burnham's estate, the executor's attorney John Watts (counsel for Cavanaugh in this action), and the Commissioner's attorney.

During the hearing, Watts "argued that DAS had no standing in the matter and should not be allowed to object to the accounting." Supp. App'x 14. The probate court ultimately rejected the financial report and ordered "a memo of law that would justify the Proposed Distribution" and "a brief on the issue of DAS's standing." Id. In January 2020, after the executor withdrew the financial report, Watts filed a brief challenging the Commissioner's standing on a number of grounds, including that the Commissioner lacked "a legally protected interest in the estate because it is a creditor of a beneficiary and not of the estate." Id. at 15. The probate court rejected that challenge. Cavanaugh's "share of the estate is subject to [the Commissioner's] lien" under Connecticut law, the court concluded, and the Commissioner "has the right to object to the Proposed Distribution in the Financial Report" since "[t]he court's acceptance or rejection of the Proposed Distribution in the Final Financial Report for the estate could adversely affect this interest." Id. at 15–16. The probate court then determined that fifty

5

percent of Cavanaugh's distributive share, which was less than the Commissioner's claim for $57,915, "would go toward repayment of [Cavanaugh's] debt to [the Commissioner]." Id. The probate court ordered "[t]he fiduciary" to file a Financial Report/Final Account "in accordance with the provisions of the decedent's Will" with the probate court within thirty days of its order. Id. at 16.

Cavanaugh filed this § 1983 action in the United States District Court for the District of Connecticut (Dooley, J.), alleging that the Commissioner's lien violated the Fourteenth Amendment and three provisions of Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq.[3] Among other relief, Cavanaugh asked for (1) a declaratory judgment that the Commissioner did not have a statutory lien on his inheritance or his grandmother's estate, and (2) a permanent injunction enjoining the Commissioner from asserting the lien or enforcing various sections of the Connecticut General Statutes "in a manner that violates" federal law. Compl. ¶¶ 26–27.

---

[3] Specifically, Cavanaugh asserts violations of 42 U.S.C. §§ 1396a(a)(25)(C), 1396p(a)(1), and 1396p(b)(1).

6

As relevant to this appeal, the Commissioner moved to dismiss Cavanaugh's complaint for lack of subject-matter jurisdiction on the ground that the District Court was obligated to abstain from exercising jurisdiction under both the doctrine of Younger v. Harris, 401 U.S. 37 (1971), and the probate exception to federal jurisdiction. The District Court decided that Younger applied and granted the motion. "[T]he Probate Court determined that Cavanaugh's interest in Burnham's estate is subject to the Commissioner's statutory lien," the court explained, and "determining the validity of such claims is integral to the Probate Court's ability to perform its judicial function of overseeing the administration of the estate." Cavanaugh v. Geballe, No. 3:20 Civ. 00981 (KAD), 2021 WL 781796, at *3 (D. Conn. Mar. 1, 2021). Invalidating the lien, the District Court believed, fell into the third category of "exceptional circumstances" relating to civil proceedings that required Younger abstention. Id. (quoting Falco v. Justs. of the Matrim. Parts of Sup. Ct. of Suffolk Cnty., 805 F.3d 425, 427 (2d Cir. 2015)).

This appeal followed.

7

**DISCUSSION**

We consider whether <u>Younger</u> abstention extends to state probate

proceedings that both raise a federal question and concern the validity of a

lien against an estate.  We conclude that the District Court's decision to

abstain here was error, and we reverse.[4]

The Supreme Court has stated that the obligation of federal courts to

hear cases within their jurisdiction is "virtually unflagging."  <u>Colorado River</u>,

424 U.S. at 817.  While comity and other interests may sometimes require a

district court to abstain from exercising its jurisdiction over a matter out of

respect for certain state court functions, <u>see</u> <u>Sprint</u>, 571 U.S. at 77, the Supreme

Court has reminded us that abstention is "the exception, not the rule," <u>id.</u> at

---

[4] As a threshold matter, the District Court did not err in first deciding whether abstention was proper under <u>Younger</u> before deciding whether it had jurisdiction over Cavanaugh's claims.  We have an "ongoing duty to satisfy ourselves not only of our own jurisdiction, but also that of" a district court "in a cause under review." <u>Stagg, P.C. v. U.S. Dep't of State</u>, 983 F.3d 589, 601 (2d Cir. 2020) (cleaned up). Although <u>Younger</u> abstention is a prudential decision not to exercise jurisdiction, we and the Supreme Court have reaffirmed that federal courts maintain "the inherent flexibility . . . 'to choose among threshold grounds' for disposing of a case without reaching the merits."  <u>Spargo v. N.Y. State Comm'n on Jud. Conduct</u>, 351 F.3d 65, 74 (2d Cir. 2003) (quoting <u>Ruhrgas AG v. Marathon Oil Co.</u>, 526 U.S. 574, 585 (1999)) (determining whether abstention was proper under <u>Younger</u> without deciding whether the plaintiffs demonstrated Article III standing).

8

82 (quotation marks omitted); New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 359 (1989) ("NOPSI"); Hawaii Housing Auth. v. Midkiff, 467 U.S. 229, 236 (1984); Colorado River, 424 U.S. at 813.

In Sprint, the Supreme Court instructed us that a district court should abstain under Younger "only in three exceptional circumstances involving (1) ongoing state criminal prosecutions, (2) certain civil enforcement proceedings, and (3) civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." Falco, 805 F.3d at 427 (quoting Sprint, 571 U.S. at 78) (quotation marks omitted). These three exceptions "define Younger's scope." Sprint, 571 U.S. at 78. To be sure, before invoking Younger a federal court may "appropriately consider[]" three additional factors laid out in Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423 (1982), that further counsel in favor of abstention: Whether "there is (1) an ongoing state judicial proceeding [that] (2) implicates important state interests and (3) provides an adequate opportunity to raise federal challenges." Sprint, 571 U.S. at 81 (cleaned up); see Falco, 805 F.3d at 427. But these conditions "[are] not dispositive; they

9

[are], instead, <u>additional</u> factors appropriately considered by the federal court before invoking Younger." Sprint, 571 U.S. at 81.

In Falco, we applied Sprint's "straightforward categorical approach" to conclude that abstention was warranted under the circumstances of that case. 805 F.3d at 427. Falco involved a husband who sued his wife for divorce and also sought custody of their children. A New York state court appointed counsel to represent the children during the custody proceedings, as permitted under New York law. Id. at 426. The state court ordered the parents to each pay half of the attorney's retainer and fees, but when the husband failed to do so, the court issued an order to show cause as to why he should not be held in contempt. Id. The husband then filed suit in federal court, challenging the constitutionality of the statute authorizing New York state judges to order parents to pay for attorneys appointed for their children. Id. at 427. We held that the husband's challenge fell squarely in Sprint's third category of proceedings that require federal court abstention. "[O]rders relating to the selection and compensation of court-appointed counsel for children," we said, "are integral to the State court's ability to perform its judicial function in divorce and custody proceedings." Id. at 428.

10

In holding that abstention was proper in this case, the District Court relied on our decision in Falco, analogizing the civil custody proceeding there to the probate proceedings here.  But the District Court misread the narrow scope of Younger abstention and the focus of our decision in Falco.

To start, the District Court mistakenly reasoned that any action that invalidates the probate court's order recognizing the validity of the Commissioner's statutory lien would interfere with the probate court's ability to oversee the administration of the estate, which the District Court viewed as integral to the probate court's performance of its judicial function.  See Cavanaugh, 2021 WL 781796, at *3.  The broad conclusion that Younger abstention requires a federal court to abstain whenever an action might interfere with a probate court's oversight function does not follow from either Sprint or Falco.  In particular, we do not believe that the probate court's order recognizing the validity of the Commissioner's lien in this case qualifies as an order "uniquely in furtherance of the state courts' ability to perform their judicial functions."  Falco, 805 F.3d at 427 (quoting Sprint, 571 U.S. at 78).

In Sprint, the Supreme Court identified two types of orders that clearly fall within that category: civil contempt orders and orders requiring the

11

posting of bonds pending appeal.  See 571 U.S. at 79.  In further describing the type of orders that permit state courts to perform their judicial function and to enforce their orders and judgments, the Supreme Court helpfully cited Juidice v. Vail, 430 U.S. 327, 336 n.12 (1977), and Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 13 (1987).  In Juidice, the Court held that, under Younger, federal courts should not interfere in state court proceedings "in which the State's contempt process is involved," 430 U.S. at 335, because the contempt process "stands in aid of the authority of the judicial system, so that its orders and judgments are not rendered nugatory," id. at 336 n.12.  "A State's interest in the contempt process," the Court said, "through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it, is surely an important interest" that should be protected from federal court intrusion.  Id. at 335 (emphasis added).  In Pennzoil, the Court held that federal courts should not interfere with state courts enforcing their own orders and judgments.  "Not only would federal injunctions in such cases interfere with the execution of state judgments," the Court reasoned, "but they would do so on grounds that challenge the very process by which those judgments were obtained."  Pennzoil, 481 U.S. at 14.

12

The state court bond orders at issue in Pennzoil were meant to "forc[e] persons to transfer property in response to a court's judgment," id. at 13, so the state court's interest went "beyond its interest as adjudicator of wholly private disputes," id. at 14 n.12 (quotation marks omitted).

Likewise, in Falco, our Court determined that the state court order in a divorce and child custody proceeding fit neatly into the third Younger category of exceptional circumstances and warranted abstention. There the federal plaintiff sought to enjoin New York State courts from enforcing their orders requiring parents to pay fees for court-appointed attorneys in child custody cases. See Falco, 805 F.3d at 428. The fees ensured that the children were represented by counsel and, in our view, were necessary for the effective administration and disposition of child custody proceedings and to "vindicate[] the regular operation" of those proceedings. Juidice, 430 U.S. at 335; see Falco, 805 F.3d at 428.

Juidice and Pennzoil both "involve[d] challenges to the processes by which the State compels compliance with the judgments of its courts." Pennzoil, 481 U.S. at 13–14 (emphasis added). Similarly, Falco involved a challenge to "the way that New York courts manage their own divorce and

13

custody proceedings." Falco, 805 F.3d at 427 (emphasis added). We learn from these cases that federal courts should refrain from interfering with core state court civil administrative processes, powers, and functions that allow the state courts to adjudicate the matters before them and enforce their judgments. But just as there is "no doctrine that the availability or even the pendency of state judicial proceedings excludes the federal courts," NOPSI, 491 U.S. at 373, Younger abstention does not prevent a federal court from exercising its jurisdiction simply because its decision might contradict a state court decision.

Here, the probate court's order recognizing the Commissioner's lien and standing to participate in the proceedings neither "lies at the core of the administration of a State's judicial system," Juidice, 430 U.S. at 335, nor implicates a process that aids the state court's core ability to function or force the parties to comply with its order. To the contrary, the probate court's order merely affects how the executor administers the estate. In this case, moreover, there is no record of non-compliance with the probate court's

14

orders, and neither party challenges the probate court's basic authority to enforce its orders or adjudicate the matters before it.[5]

In holding otherwise, the District Court was primarily concerned that Cavanaugh's challenge, as an attempt to relitigate the validity of the Commissioner's lien, would "nullif[y]" the probate court's determination. See Cavanaugh, 2021 WL 781796, at *3.  Viewed correctly, however, the state suit in this case was no more than a run-of-the-mill challenge to a claim for money, while the related federal suit would not hinder the probate court's basic authority to enforce its orders.  As such, the state suit comes within none of the exceptions that Younger or Sprint established.

The District Court also considered Connecticut's interest in having its probate courts properly administer estates within their custody and the possibility that the probate court's determination was reviewable on "appeal to the superior court."  See Cavanaugh, 2021 WL 781796, at *3.  The District Court appears to have taken its cue in part from a 2005 decision of the Fourth

_____

[5] Although the order also directed "[t]he fiduciary" to file a Financial Report/Final Account "in accordance with the provisions of the decedent's Will," Supp. App'x 16, it was not an order forcing the executor to distribute funds or to do anything on pain of contempt by the probate court.

Circuit, Harper v. Public Service Commission of West Virginia, 396 F.3d 348 (4th Cir. 2005), which did not concern state probate proceedings but stated, in dictum, that "the law of probate, trusts, and estates — allocating the personal property of citizens — remains an important interest of the states for Younger purposes." Id. at 352–53. Harper preceded Sprint, which, in our view, casts serious doubt on the Fourth Circuit's analysis in Harper. With the benefit of Sprint, our sister Circuits have held that "Younger abstention is improper in civil cases outside of the two limited categories referred to [in Sprint], regardless of the subject matter or the importance of the state interest." Cook v. Harding, 879 F.3d 1035, 1039 (9th Cir. 2018); see also Mulholland v. Marion Cnty. Election Bd., 746 F.3d 811, 819 (7th Cir. 2014) ("In the three categories of cases identified in Sprint, Younger abstention serves to reach an equitable accommodation of the states' interest in enforcing their own laws with the need for federal protection of federal rights."). We agree. Although the State's interest in probate matters and the possibility of using the State's appellate process may be important factors, they implicate the additional, non-dispositive Middlesex factors, which, as Sprint instructs, do not by

16

themselves tell us whether the federal court should abstain.  See Sprint, 571 U.S. at 81.

Because Cavanaugh's federal action does not fall within Sprint's third category, we conclude that abstention under Younger was not warranted.[6] We therefore vacate the District Court's judgment and remand for the District Court to consider in the first instance the parties' arguments regarding the probate exception to federal jurisdiction and, if necessary, the merits of Cavanaugh's claims.  See Eric M. Berman, P.C. v. City of New York, 796 F.3d 171, 175 (2d Cir. 2015).

**CONCLUSION**

We have considered the Commissioner's remaining arguments regarding whether the District Court properly abstained under Younger and conclude that they are without merit.  For the foregoing reasons, we **VACATE** the judgment of the District Court and **REMAND** for further proceedings consistent with this opinion.

---

[6] The Commissioner does not argue, nor did the District Court conclude, that abstention is proper under Sprint's first or second categories, because the probate proceeding at issue is not at all similar to a state criminal prosecution or civil enforcement proceeding.  See Sprint, 571 U.S. at 79–80.