United States Court of Appeals

For the Eighth Circuit

_____

No. 21-3367

_____

375 Slane Chapel Road, LLC

*Plaintiff - Appellant*

v.

Stone County, Missouri, et al.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Joplin

_____

Submitted: June 15, 2022
Filed: November 22, 2022

_____

Before LOKEN and KELLY, Circuit Judges, and MENENDEZ, District Judge.[*]

_____

LOKEN, Circuit Judge.

Joseph and Yvonne Cordell own 375 Slane Chapel Road, LLC ("375"), a limited liability company that owns and operates a substantial vacation home adjacent to Table Rock Lake in Stone County, Missouri. When the Cordells' personal use of

_____

[*]The Honorable Katherine M. Menendez, United States District Judge for the District of Minnesota, sitting by designation.

the home declined, 375 applied in October 2020 for a conditional use permit ("CUP") to rent out the property to short-term renters on platforms such as Airbnb. A CUP is required by Art. 4, § 25 of the Stone County Zoning Regulations (the "Short-Term Rental Regulation"). After a November 17 hearing at which 375 presented testimony and exhibits in favor of the application and Marlin Constance, a nearby property owner, spoke in opposition, the Stone County Planning & Zoning Commission approved the application by a 7-6 vote. Constance appealed the Commission's decision to the Stone County Board of Adjustment. See Stone Cty. Zoning Reg., Art. 27, §§ 1(F), 3. After a hearing on April 13, 2021 at which those supporting and opposing 375's application appeared, the Board of Adjustment voted 3-0 to reverse the Planning & Zoning Commission's decision and deny 375 a CUP.

On May 12, 375 filed separate actions in state and federal court to overturn the Board of Adjustment's decision. In the Western District of Missouri, 375 filed this federal action, alleging that the Short-Term Rental Regulation is unconstitutionally vague on its face and as applied to 375 because, by using the word "may," the regulation gives the Board of Adjustment unbridled discretion. One hour later, 375 filed a certiorari action in the Circuit Court of Stone County against the Board of Adjustment under Mo. Rev. Stat. § 64.870, alleging that the Board's decision was not supported by competent and substantial evidence, and that the Board unlawfully applied the Short-Term Rental Regulation in a disparate and discriminatory manner in violation of the Equal Protection Clauses of the United States and Missouri Constitutions. U.S. Const. amend. XIV, § 1; Mo. Const. art. 1, § 2.

Defendants promptly moved to dismiss this lawsuit, arguing, as relevant here, that 375's federal claims are "barred by the Younger abstention doctrine." Invoking Younger v. Harris, 401 U.S. 37 (1971), the district court granted the motion, abstained from adjudicating the federal complaint in deference to "the parallel state court proceeding," dismissed 375's complaint without prejudice, and subsequently denied 375's Rule 59(e) motion to alter or amend the judgment. 375 appeals these

rulings.   Concluding that the district court misinterpreted the "exceptional circumstances" warranting Younger abstention as defined in Sprint Communications v. Jacobs, 571 U.S. 69, 78, 82 (2013), we reverse.

## I. The Abstention Landscape

In Younger v. Harris, the Supreme Court held that, absent "extraordinary circumstances," "the possible unconstitutionality of a [state] statute 'on its face' does not in itself justify an injunction against good-faith attempts to enforce it."  401 U.S. at 54.  Though Younger reversed a federal court injunction of a state criminal prosecution, the Court later "clarified and expanded" the scope of the Younger abstention doctrine to include limited types of civil cases.  See Minn. Living Assistance, Inc. v. Peterson, 899 F.3d 548, 551 (8th Cir. 2018), cert. denied, 139 S. Ct. 1195 (2019) (citing cases); 17B Charles Alan Wright, et al., Federal Practice & Procedure § 4254 (3d ed. 2022 Supp.).  In Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423 (1982), where an attorney challenged the constitutionality of ongoing state attorney disciplinary proceedings, the Court explained that "[t]he policies underlying Younger are fully applicable to noncriminal judicial proceedings when important state interests are involved," such as the state bar disciplinary proceedings at issue.  Id. at 432-34.  Applying Middlesex, federal courts in subsequent cases considered what are called the three "Middlesex factors" in deciding whether to abstain:  whether there is an "(1) ongoing state judicial proceeding, which (2) implicates important state interests, and (3) provides an adequate opportunity to raise federal challenges."  Sprint, 571 U.S. at 81 (cleaned up).

In New Orleans Public Service, Inc. v. Council of the City of New Orleans ("NOPSI"), the Court altered this analysis when it emphasized that "only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States."  491 U.S. 350, 368 (1989).  The Court explained that the requisite "exceptional circumstances" are limited to three types of state civil and criminal

-3-

proceedings: (1) "pending state criminal prosecutions," (2) certain "civil enforcement proceedings" warranting abstention, and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." Id. In NOPSI, the Court reversed the lower courts' decision to abstain in a federal case seeking judicial review of a city council's rate-making decision because review of that decision was also pending in state court:

> [I]t has never been suggested that Younger requires abstention in deference to a state judicial proceeding reviewing legislative or executive action. Such a broad abstention requirement would make a mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States. . . . [W]e have never extended [Younger] to proceedings that are not 'judicial in nature.' . . . The Council's proceedings in the present case were not judicial in nature.

> \*　\*　\*　\*　\*

> There is no contention here that the Louisiana courts' review [of the Council's decision] involves anything other than a judicial act . . . . As a challenge to completed legislative action, NOPSI's suit . . . is, insofar as our policies of federal comity are concerned, no different in substance from a facial challenge to an allegedly unconstitutional statute or zoning ordinance -- which we would assuredly not require to be brought in state courts.

Id. at 368, 370, 372 (cleaned up). In reversing, the Court applied its long-standing principle that "federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred," a principle that "do[es] not call into question, the federal courts' discretion in determining whether to grant certain types of relief." Id. at 358-59 (citations omitted).

-4-

Over two decades later, reviewing administrative action being challenged in federal and state court, the Supreme Court again reversed a circuit court abstention order, this time by our court, in Sprint Communications v. Jacobs. In an opinion by Justice Ginsburg, the unanimous Court, citing NOPSI, emphasized that "federal courts are obliged to decide cases within the scope of federal jurisdiction. Abstention is not in order simply because a pending state-court proceeding involves the same subject matter." 571 U.S. at 72. Rather, Younger extends only to the three "exceptional circumstances" the Court identified in NOPSI – state criminal prosecutions, civil enforcement proceedings, and "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." Id. at 78, citing NOPSI, 491 U.S. at 368, and two prior cases NOPSI cited to define the third limited class of cases. Noting that our court had relied on the Middlesex factors to support abstention, the Court explained that the Middlesex factors are "additional factors appropriately considered . . . before invoking Younger," id. at 81, to be considered *after* the NOPSI category has been satisfied:

> Divorced from their quasi-criminal context, the three Middlesex conditions would extend Younger to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest. That result is irreconcilable with our dominant instruction that, even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the "exception, not the rule." In short, to guide other federal courts, we today clarify and affirm that Younger extends to the three "exceptional circumstances" identified in NOPSI, but no further.

Id. at 81-82 (citations omitted). Applying this directive, we held in Minnesota Living Assistance, 899 F.3d at 552, that determining whether Younger abstention is appropriate requires a three-part inquiry:

> First, does the underlying state proceeding fall within one of the three "exceptional circumstances" where Younger abstention is appropriate?

Second, if the underlying proceeding fits within a Younger category, does the state proceeding satisfy what are known as the "Middlesex" factors? And third, even if the underlying state proceeding satisfies the first two inquiries, is abstention nevertheless inappropriate because an exception to abstention applies?

The district court's decision to abstain is reviewed for abuse of discretion. "Whether Younger abstention is appropriate is a question of law, and the district court abuses its discretion when it makes an error of law." Id. at 551 (citations omitted).

## II. Discussion

Citing Minnesota Living Assistance, the district court correctly recognized "that a federal court should abstain from exercising jurisdiction over a case [under Younger] if there is a parallel state proceeding which fits into one of three narrow categories." But the court fell off the proper analytical path when it quoted the third category as paraphrased in Minnesota Living Assistance -- "a proceeding implicating a state's interest in enforcing the orders and judgments of its courts," 899 F.3d at 552 -- instead of the third category as carefully defined in NOPSI and quoted verbatim in Sprint -- "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." 491 U.S. at 368.

The district court's definition of what we will call Category 3 shares the flaw in relying exclusively on the Middlesex factors identified by the Supreme Court in Sprint -- it "would extend Younger to virtually all parallel state and federal proceedings . . . where a party could identify a plausibly important state interest." 571 U.S. at 81. The two cases cited by NOPSI as examples of Category 3 make clear that its focus is institutional -- "the state courts' ability to perform their judicial functions" -- not simply the State's interest in enforcing a particular court order. NOPSI, 491 U.S. at 368. Both involved challenges to the process by which a State compels compliance with the judgments of its courts. Juidice v. Vail, 430 U.S. 327,

-6-

335-36 (1977), involved the state courts' ability to enforce a civil contempt order; Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 13-14 (1987), involved the state courts' ability to enforce a posting of bond pending appeal. See 430 U.S. at 335; 481 U.S. at 3-6.

The parties' briefs on appeal focused almost entirely on the Middlesex factors, skipping over the first inquiry which a party seeking Younger abstention must satisfy. When asked at oral argument which of the three NOPSI categories applies, counsel for Defendants said categories "two and three are both potential candidates to be applied in this situation."[1] We conclude neither category applies and therefore the district court erred in abstaining under Younger.

**A. Category 2**. The second NOPSI category, a "civil enforcement proceeding," is limited to cases involving state proceedings that are "akin to a criminal prosecution" "in important respects." Huffman v. Pursue, Ltd., 420 U.S. 592, 604 (1975). That is, civil proceedings that are "quasi-criminal" in nature. Sprint, 571 U.S. at 81. In deciding this question, the Court in Sprint asked: (1) was the action commenced by the State in its sovereign capacity? (2) Was the proceeding initiated to sanction the federal plaintiff for some wrongful act? (3) Are there other similarities to criminal actions, such as a preliminary investigation culminating in the filing of formal charges? See id. at 79-80.

We conclude that, without question, neither the administrative zoning proceeding, nor the on-going certiorari proceeding seeking judicial review of the Adjustment Board's decision, was quasi-criminal in nature. There is no state enforcement proceeding here, no action initiated by "the State in its sovereign capacity." Sprint, 571 U.S. at 80. 375, a private company, initiated the civil

---

[1]NOPSI Category 1 unquestionably does not apply as this case does not involve a criminal proceeding. Sprint, 571 U.S. at 78.

administrative proceeding to obtain a needed permit. This private action is not "akin to a criminal prosecution." Huffman, 420 U.S. at 604. 375's federal complaint does not allege that a government authority investigated 375's activities or lodged a formal complaint against 375. Defendants argue, without citing any authority, that Category 2 applies because Stone County *might* have begun enforcement proceedings had 375 not applied for a CUP. Counsel at oral argument could not identify a principle that would limit this theory of "exceptional circumstances," and other courts have refused to apply the doctrine in similar circumstances. See Titlemax of Del., Inc. v. Weissmann, 24 F.4th 230, 237 (3d Cir. 2022) ("possibility of contempt" proceedings does not trigger Younger abstention). Abstention is "the exception, not the rule," and Younger abstention is limited to the three NOPSI "exceptional categories." Sprint, 571 U.S. at 82. Here, the NOPSI Category 2 shoe does not fit.

**B. Category 3**. The third NOPSI category is limited to "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." 491 U.S. at 368. The district court's decision that this case falls within Category 3 reflected its flawed definition of the scope of this category. The court concluded that "this particular state court proceeding is sufficiently judicial in nature to 'implicate the state's interest in enforcing the orders and judgments of its court'" because judicial appeal of an action applying zoning regulations is "quasi-judicial in nature," and "Missouri's ability to administer zoning and land use-related matters is an important state interest implicating principles of comity and federalism." In support, the court cited Night Clubs, Inc. v. City of Fort Smith, 163 F.3d 475 (8th Cir. 1998), a decision that applied the Middlesex factors without addressing whether the case fell within at least one of the NOPSI categories.

At oral argument, Defendants argued that Category 3 applies because planning and zoning land-use issues are quintessential matters of state law and therefore federal courts should not interfere with these proceedings. Like the district court, Defendants focus on interference with matters of state interest, a Middlesex factor

that is only addressed if <u>NOPSI</u> Category 3 is satisfied. Defendants emphasize that "the State Action is ongoing and judicial in nature." But this ignores the Supreme Court's repeated reminder that parallel state court proceedings do not detract from the "virtually unflagging obligation" of federal courts "to exercise the jurisdiction given them." Sprint, 571 U.S. at 77.

Category 3 is limited to civil proceedings involving orders "uniquely in furtherance of the state courts' ability to perform their judicial functions." Category 3 does not include "a state judicial proceeding reviewing legislative or executive action," such as denying 375 a zoning permit. <u>NOPSI</u>, 491 U.S. at 368; <u>see</u> <u>FCA US, LLC v. Spitzer Autoworld Akron, LLC</u>, 887 F.3d 278, 290 (6th Cir. 2018) ("[t]he Ohio administrative proceeding [at issue] has no relation to . . . orders that are uniquely in furtherance of the judicial function of the Ohio courts."). Nor is Category 3 triggered simply because the state civil administrative proceeding involves a quintessentially state-law matter such as zoning and land-use planning. <u>See, e.g.</u>, <u>Cavanaugh v. Geballe</u>, 28 F.4th 428, 432-35 (2d Cir. 2022) (probate proceedings); <u>Cook v. Harding</u>, 879 F.3d 1035, 1040-41 (9th Cir. 2018) (family law); <u>Boerschig v. Trans-Pecos Pipeline, L.L.C.</u>, 872 F.3d 701, 705 n.2 (5th Cir. 2017) (eminent-domain proceedings). Because this parallel federal action does not interfere with "the state courts' ability to perform their judicial functions," it does not fall within the narrow parameters of <u>NOPSI</u> Category 3 and therefore does not deprive the district court of jurisdiction.

The Judgment of the district court is reversed and the case is remanded to the district court for further proceedings not inconsistent with this opinion.[2] On remand, given the parallel state court proceeding, we urge the district court to focus on the

---

[2]As we conclude the district court erred in dismissing 375's Complaint without prejudice, we need not address the court's denial of 375's motion for post-judgment relief under Fed. R. Civ. P. 59(e).

Supreme Court's reminder that a decision not to abstain "do[es] not call into question, the federal courts' discretion in determining whether to grant certain types of relief." NOPSI, 491 U.S. at 358-59; cf. Window World, Int'l, LLC v. O'Toole, 21 F.4th 1029, 1034 (8th Cir. 2022).

————————————————